Randall Dale ADAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 60037.

Court of Criminal Appeals of Texas, En Banc.

Sept. 30, 1981.

Rehearing Denied Dec. 16, 1981.

Melvyn Carson Bruder and J. Stephen Cooper, Dallas, George A. Preston, Denton, for appellant.

Henry Wade, Dist. Atty., and W. T. Westmoreland, Jr., Douglas Mulder and

Winfield Scott, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

Our prior opinions on remand from the Supreme Court of the United States are withdrawn.

In *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the Supreme Court held that in appellant's trial prospective jurors were excluded on grounds inconsistent with *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), with the result that the death penalty could not be carried out. Subsequently the Governor signed an executive order commuting appellant's punishment to life. There is now no error in the case, and the judgment of conviction will be affirmed. *Whan v. State*, Tex.Cr.App., 485 S.W.2d 275.

The dissent attempts to distinguish *Whan v. State*, supra, on the basis of the bottom line decision by the Supreme Court in this case. The bottom line in *Adams v. Texas*, supra, said:

"The judgment of the Texas Court of Criminal Appeals is consequently reversed to the extent that it sustains the imposition of the death penalty."

This disposition of the case simply reversed the judgment of *this* Court in part, 577 S.W.2d 717. It has no direct effect on the as yet unaltered judgment of the trial court. Only upon entry of a new judgment of this Court and the issuance of this Court's mandate upon that judgment would the trial court's judgment, and with it the jury's death-producing verdict, be set aside. The dissent's argument that there was "nothing to commute" when the Governor

entered his order presumes a direct impact by the Supreme Court decision upon the jury's verdict, outside of time and the orderly course of judicial proceedings. The sequence of events, however, is otherwise. The Supreme Court decision initiated a sequence of proceedings which, if allowed to run a natural course, would have resulted in there being "nothing to commute." The Governor's order, however, reached the punishment before the judicial sequence did, and it is the judiciary, not the executive branch, that is left with no death penalty upon which to exercise its power.

The Governor having commuted the death penalty, and, consequently, there being no such penalty for this Court to set aside, "the proper course for this Court to follow is to again affirm the judgment of the trial court." *Whan v. State*, supra.

The State's motion for rehearing is granted and the judgment is affirmed.

CLINTON, Judge, dissenting.

To the simplistic approach taken by the majority to decide what surely is one of the most important constitutional questions to come before us this term, I respectfully dissent.

From the beginning every constitution of this State has divided the powers of government into three separate departments: "Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another." Article II, § 1, Constitution of Texas.[1] It has further insisted that except as "herein expressly permitted," persons in one department shall not "exercise any power properly attached to either of the others," *ibid*. Notwithstanding these bedrock principles are at least implicated by what is happening in this matter, the majority is content to say that "the result" of the decision of the Supreme Court is "that the death penalty could not be carried out" and since the Governor signed an order "commuting appellant's punishment to life," "[t]here is

---

1. Similarly, the Constitution of the Republic of Texas, Article I, § 1, 3 Vernon's Texas Constitu- tion 523.

now no error in the case," so the judgment of conviction will be affirmed. *Whan v. State*, 485 S.W.2d 275 (Tex.Cr.App.1972), is cited as solo authority for that affirmance. I believe the constitutional mandate for separation of powers of government deserves more consideration than mere reference to an opinion delivered almost a decade ago under the former penal code and before enactment of the special bifurcated procedure in a capital case prescribed in Article 37.071, V.A.C.C.P.

Handed down January 31, 1979 the opinion of this Court affirmed the judgment of the trial court; rehearing was denied March 21, 1979. *Adams v. State*, 577 S.W.2d 717 (Tex.Cr.App.1979). The Clerk of this Court issued its mandate March 23, 1979, mailing it to the clerk of the trial court, who presumably received, filed and noted it on the docket.[2] Up until then, all things being regular, sentence had not yet been pronounced, Article 42.04,[3] V.A.C.C.P., but on April 5, 1979 it was.[4] Thus, it was the final judgment of this Court which the Supreme Court "reversed to the extent that it sustains the imposition of the death penalty," and routinely remanded the cause.

*Adams v. Texas* was decided June 25, 1980. The executive order purporting to commute punishment was signed July 11, 1980.[5]

**2.** Articles 42.04, 44.26 and 44.27, V.A.C.C.P.

**3.** "When an appeal is taken from a death penalty, sentence shall not be pronounced, but shall be suspended until the decision of the Court of Criminal Appeals has been received."

**4.** That development is reported in a motion for recall and stay of the mandate of this Court filed here April 20, 1979, and denied the same day. However, execution of the sentence was stayed by Justice Powell May 1, 1979, pending disposition of certiorari proceedings, 25 CrL 4049.

**5.** Yet, the commutation order was not received by the Clerk of this Court until after this Court decided on original submission to reverse and remand the causes of *Pierson v. State*, 614 S.W.2d 102 (Tex.Cr.App.1980); *Evans v. State*, 614 S.W.2d 414 (Tex.Cr.App.1980); *Loudres v. State*, 614 S.W.2d 407 (Tex.Cr.App.1980) and *Grijalva v. State*, 614 S.W.2d 420 (Tex.Cr.App.

The proclamation, in pertinent part, recites that the Governor, acting under constitutional and statutory authority "and acting upon and because of the recommendation of the Board of Pardons and Paroles dated July 11, 1980," grants unto appellant[6]

"THE COMMUTATION OF SENTENCE FROM DEATH TO LIFE IMPRISONMENT IN THE TEXAS DEPARTMENT OF CORRECTIONS."

Only on account of Article IV, § 11 of the Constitution of the State of Texas, does the power of executive clemency include the grant of "commutations of punishment," and to prevent prevalent abuses of clemency powers in 1936 the constitutional provision was amended to restrict the grant of commutation of sentence, among others, by requiring exercise of the power be conditioned "on the written signed recommendation and advice of the Board of Pardons and Paroles," *id.* See Interpretive Commentary following § 11, 1 Vernon's Texas Constitution 797–798; see also *Ex parte Lefors*, 165 Tex.Cr.R. 51, 303 S.W.2d 394, 397 (1957), and Article 48.01, V.A.C.C.P., codifying substantially the constitutional grant.[7] Consonantly, the Legislature has authorized the Board of Pardons and Paroles (Board) to "investigate and report to the Governor with respect to any person being considered by the Governor for ... commutation of *sentence*," Article 42.12, § 25, V.A.C.C.P.

1980), in all of which State's motion for rehearing was overruled April 29, 1981.

**6.** There is nothing in the record before this Court to indicate that appellant sought a commutation of sentence. Indeed, through a motion to strike filed by his attorney, appellant insisted that the State's motion for rehearing, which relied on the commutation order for the relief the Court now grants, breached Rule 11 of this Court, and demanded that a mandate be issued forthwith "consistent with the opinion delivered herein on May 27, 1981," which remanded the cause for new trial.

**7.** Former Article 955, 1925 Code of Criminal Procedure, authorized the Governor to "commute the punishment in every case of capital felony ... by changing the penalty of death to imprisonment for life, or for a term of years," and present Article 48.01, supra, does not indicate a legislative intent to withdraw that gubernatorial discretion.

In turn the Board, pursuant to another grant of authority to do so, *id.*, § 18,[8] has adopted internal rules pertaining to its investigative and reporting functions in this respect, and within the constraints of its own definition, *viz*:

> " 'Commutation of *sentence*' means an act of clemency by the governor which serves to modify the conditions of a *sentence.*" [9]

Therefore, it is clear from constitutional grants through statutory provision to board rules that in the respect under consideration the power of commutation attaches to a SENTENCE.

Under Article V, § 1 the judicial power of this State is vested in, e.g., this Court and in District Courts. The jurisdiction of this Court is primarily appellate "in all criminal cases of whatever grade . . .," Article V, § 5; the District Court has "original jurisdiction in criminal cases of the grade of felony," *id.*, § 8, and through procedure statutorily provided—including a mandatory jury trial that may not be waived in capital cases, Articles 1.14 and 37.071, V.A. C.C.P.—it, and it alone, has *jurisdiction* to adjudicate guilt, assess punishment and impose sentence on persons accused of felonies; see *Lott v. State*, 18 Tex.App. 627 (1885) and see generally *Ex parte Cannon*, 546 S.W.2d 266 (Tex.Cr.App.1976) (Concurring Opinion of Odom, J.).

In annotation number 25 following Article 37.07, V.A.C.C.P. appears the following correct statement of erstwhile ingredients

of a valid verdict in a capital murder case that is easily adaptable to related provisions of the present code of criminal procedure:

> "By the adoption of the Revised Penal Code the penalty for murder has been changed from death absolutely, to the alternative of death or confinement for life in the penitentiary, and the jury must not only find by their verdict that the defendant is guilty of murder in the first degree, but they must assess the punishment at either death or confinement in the penitentiary for life. A general verdict of guilty of murder in the first degree without assessing the punishment, will be insufficient to support a judgment. *Doran v. State* (1879) 7 Tex.App. 385; *Wooldridge v. State* (1883) 13 Tex. App. 443, 44 Am.Rep. 708. * * * "

Thus, today a general verdict of guilty of capital murder without affirmative jury responses to the Article 37.071 questions put to it at the punishment phase "*will be insufficient to support a judgment*" assessing the death penalty.

The judgment of the trial court, conformably with requirements of Article 42.01, § 1, V.A.C.C.P.,[10] recited, as well as the finding of guilty by the jury, the verdict on punishment—two of the three questions posed by Article 37.071, V.A.C.C.P. and the affirmative answers made by the jury—and, as the jury had determined, adjudged that appellant be punished by having the death penalty assessed against him.[11] However on

---

8. "The Board shall formulate rules as to the submission and presentation of information and arguments to the Board for and in behalf of any person within the jurisdiction of the Board." (Rules, February 20, 1981). (All emphasis is mine unless otherwise indicated.)

9. Rules, § 141.111(.005). While § 143.57 indicates commutation of a "death *sentence*" will be to "a *sentence* of life imprisonment or the appropriate maximum penalty that can be imposed," § 143.58 is not so restricted. See note 7, supra.

   Thus, the statutory and regulatory scheme is in accord with the general proposition that commutation is "an act appropriate for reducing existing *sentences*, and the governor in the exercise of his power to commute cannot

change the judgment of the court," 67A C.J.S. Pardon and Parole § 33b, pp. 44–45.

10. "A 'judgment' is the declaration of the court entered of recording, showing:

   '1. The title and number of the case;

   \*  \*  \*  \*  \*  \*

   8. The verdict;

   9. In the case of a conviction, that it is considered by the court that the defendant is adjudged to be guilty of the offense as found by the jury; . . .

   10. That the defendant be punished *as has been determined.*' "

11. Article 37.07, V.A.C.C.P., provides in § 3(c) that in cases where punishment is to be assessed by a jury, "the verdict shall not be complete until the jury has rendered a verdict

June 28, 1980, with the decision of the Supreme Court of the United States, there was no valid determination and assessment of punishment under the law of the case doctrine.[12] For, as the Court, originally held in *Turner v. State*, 485 S.W.2d 282, 284 (Tex.Cr.App.1972) and *Harris v. State*, 485 S.W.2d 284, 285 (Tex.Cr.App.1972) since the Supreme Court found in each case that punishment was erroneously assessed or imposed, respectively, "its status is the same as if the jury had been unable to agree on a verdict."

Without a complete jury verdict, of course, a judgment may not be rendered, and without a judgment there is no death sentence. *Inter alia*, Articles 37.07, 37.071, 42.01 and 42.02, V.A.C.C.P. The interworkings of these and other procedural statutes and judicial precedents produce the rationale that brought this Court to conclude in the *Grijalva-Loudres-Pierson* triology and

in *Evans*, cited supra at note 5, supra, that when *Witherspoon-Adams* error is found by the Court the only judgment to be rendered is one reversing the judgment of conviction and remanding for a new trial on the capital murder indictment. This, since the affirmative responses written down in its verdict are without force and effect, because made by a constitutionally infirm jury. What is left is still insufficient to support a judgment. In the Judicial Department the inexorable consequence is that the case stands as if never tried, and in due course will be returned to the jurisdiction of the District Court for retrial, should the prosecution be so advised.

As matters stood on July 11, 1980, then, there was not an executable sentence for the Governor to commute, nor a valid judgment assessing punishment at death.[13] In short, there was nothing to commute.[14]

both on the guilt or innocence ... and the amount of punishment...."
In a capital case the trial court renders its judgment of guilt and punishment only after the jury has returned "a special verdict of 'yes' or 'no' on each issue submitted," Article 37.071, (c) and (e), V.A.C.C.P.

**12.** See Black's Law Dictionary (Rev. 5th Ed.).

**13.** In my judgment, renewed reliance by the majority on *Whan v. State*, 485 S.W.2d 275 (Tex.Cr.App.1972) is misplaced. The analysis in *Whan* is flawed by its concentration on finding the meaning of the term "after conviction" as used in Article IV, § 11, Constitution of Texas, and Article 48.01, supra, and resorting to the authorities considered by the *Whan* Court in that endeavor. It has never been suggested that commutation lies before conviction; and certainly, the authorities conclude that "after conviction" means after determination of guilt or innocence of the accused by the verdict of guilty pronounced by jury—for purposes of when a person becomes subject to PARDON. *Whan, id.*, at 276–277. Having satisfied itself that "a *pardon* is valid even if granted before sentence is pronounced," and noting that authority to grant commutations is in the same section of the Constitution, the opinion then leapt mightily to conclude, "It follows that a commutation under the same circumstances would likewise be valid, the punishment having been assessed before sentence is pronounced, and therefore subject to commutation." Later, is an indication the Court is acting on the legal premise that commutation "merely mitigates the punishment

which *can be given*." But, for me, it does not follow for three reasons: first, as has been demonstrated *ante*, commutation must attach to a sentence; secondly, "the governor in the exercise of his power to commute cannot change the judgment of a court," 67A C.J.S. Pardon and Parole 44–45; thirdly, with deference, the court misread the cited authority for its legal premise: what the *Young v. Young*, 61 Tex. 191 Court did was to accept the definition of Bouvier's Law Dictionary that commutation is "[t]he change of a punishment to which a person *has been condemned*"—not one "which can be given." Finally, the *Whan* opinion does not even undertake to refute the strong dissenting opinion by Presiding Judge Onion.

**14.** The conception of the majority that the ruling of the Supreme Court of the United States "has no *direct* effect on the as yet unaltered judgment of the trial court" exalts form over substance. The death sentence had been suspended by operation of law, Article 42.04, V.A. C.C.P., and the authority of the trial court to pronounce it became effective only upon receipt of the mandate of this Court. However, though then pronounced, enforcement of the sentence was stayed by the Supreme Court through its June 25, 1980 decision, reversing the judgment of this Court that sustained imposition of the death penalty. Accordingly, the very action of this Court, formalized in its mandate, that permitted pronouncement of sentence by the trial court was invalidated. To suggest that the flow of paperwork has not yet trickled down to the level of the trial court and, therefore, its sentence and judgment retained

The remand to this Court is for further proceedings "not inconsistent with the opinion" of the Supreme Court. A new trial below with constitutionally selected jurors sitting in the jury box is the consistent judicial proceeding.

It is clear to me that in the interim, while the cause is in transit back to the trial court, if a purported commutation order is given the effect *Whan* and its progeny produced, the exercise of clemency by the Governor is a direct, positive and absolute nullification of the power of the Judicial Department. As shown *ante* there is neither a validly existing sentence to which the purported commutation may attach,[15] nor is there a valid judgment assessing the death penalty—though the order does not purport to attach to a judgment. The order, therefore, in effect commits appellant to the Texas Department of Corrections for a term of confinement affixed at the discretion of the Executive Department. It is based on the written signed recommendation and advice of the Board of Pardons and Paroles, a collection of persons in the Executive Department, who in turn have a request from someone in a position to make it.[16] That the Board has the authority to investigate and consider any such request— it claims not to solicit them—is not questioned when it does so within the constraints of its own definition of "commutation of *sentence*." But for the Board and the Governor to exercise their respective functions where there is not a sentence, or even a valid assessment of punishment, to commute is surely a usurpation of judicial power and authority.

Because appellant is now confined for life imprisonment by fiat of the Executive Department rather than punished by judgment entered and sentence imposed through regular trial and appellate proceedings in the Judicial Department, I must dissent.

ONION, P. J., and TEAGUE, J., join.

---

continuing vitality is, I respectfully submit, dangerous doctrine. The application of it to the extreme would nullify the mandate of the Supreme Court and subject the condemned on death row to the very ultimate penalty the State is disentitled by the Constitution to execute.

15. "Commutation is not, however, a tool for resentencing prisoners whose sentences have been vacated; it is rather an act appropriate for reducing existing sentences ..," 67A C.J.S. Pardon and Parole § 33b, p. 44.

16. Rules, §§ 143.57, 143.58, supra.