**Ex parte William E. SPAULDING, III.**

**No. 69371.**

Court of Criminal Appeals of Texas, En Banc.

March 13, 1985.

Rehearing Denied April 24, 1985.

---

Craig Lundquist, Huntsville, for appellant.

Robert E. Bell, Dist. Atty., Edna, Robert Huttash, State's Atty., Austin, for the State.

**OPINION**

CAMPBELL, Judge.

This is a post-conviction writ of habeas corpus brought pursuant to Art. 11.07, V.A.C.C.P. Applicant complains that his conviction for aggravated sexual abuse is void. Applicant contends that the jury's assessment of a $10,000.00 fine in addition to a term of years as punishment is unauthorized by law and therefore the verdict is void and any subsequent judgment and sentence based upon the void jury verdict is void. We agree and grant relief.

Applicant was indicted for aggravated sexual abuse. The indictment further alleged two [1] prior felony convictions for purposes of enhancement. After trial to a jury, the applicant was found guilty. The jury found the applicant had previously been convicted of a felony and assessed punishment at fifty years confinement at the Texas Department of Corrections and a fine of $10,000.00. The trial judge had orally instructed the jury that they could assess a fine as well as confinement. The jury verdict form also included a notation that the jury "has the discretion to assess a fine not to exceed $10,000.00 or not to assess any fine whatever."

Applicant appealed his conviction which was affirmed by the Thirteenth Court of Appeals (Corpus Christi). 656 S.W.2d 538. Applicant has filed, without the assistance of counsel, four previous writs of habeas corpus which have all been denied without written order. Applicant, now represented by Staff Counsel for Inmates, for the first time raises the issue presented here.

In *Bogany v. State*, 661 S.W.2d 957 (Tex. Cr.App.1983) this Court held that V.T.C.A. Penal Code, Section 12.42 did not authorize a fine in addition to the enhancement of punishment. This Court refused to harmonize sections 12.42 and 12.32, supra, and

---

1. The State abandoned one of the two enhancement paragraphs prior to the submission of the case to the jury on punishment.

held that any jury verdict assessing a fine in addition to enhanced jail time was "void from its inception." *Bogany,* supra at 959.

The State concedes that if this Court is to continue following *Bogany* that applicant is entitled to relief. The State by its district attorney argues that *Bogany* should be reinterpreted to mean that any fine assessed is in fact surplusage that this Court can ignore.

Surplusage in a jury verdict has been defined as language unnecessary to the verdict where the jury's intent is clearly discernible without said language. See 25 Tex.Jur.3d, sec. 3606 (Criminal Law) and the cases cited therein. We cannot find that the jury's assessment of a $10,000.00 fine was "unnecessary." It is clear from the record that the jury fully intended to assess a fine *as they were instructed that they could do in their discretion.*[2]

Finally the State, through its State Prosecuting Attorney, has filed a motion to dismiss the application as moot, alleging that the Governor of the State of Texas has remitted applicant's fine and deleted the offending portion, thus making applicant's contention moot. Neither party has briefed the question of the Governor's power to commute or remit a portion of a void judgment and sentence. This appears to be a question of first impression.

Under the Texas State Constitution the Governor is granted the exclusive power to grant pardons and commutation.[3] *Ex parte Thomas,* 108 Tex.Cr.R. 653, 2 S.W.2d 270 (1928). A commutation limits or modifies an original sentence. 27 Tex.Jur.3d, sec. 4403 (Criminal Law). However, in *Bogany* this Court found that the judgment and sentence based upon a jury verdict unauthorized by law was void. Black's Law Dictionary defines a void judgment as:

"One which has no legal force or effect, invalidity of which may be asserted by any person whose rights are affected at any time and at any place directly or collaterally. [citation omitted.] One which, from its inception is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind parties or support a right, of no legal force and effect whatever, and incapable of any confirmation, ratification or enforcement in any manner or to any degree." [citation omitted.]

Black's Law Dictionary, p. 1745 (Fourth Ed.1968, West Pub.Co.). Void is further defined in Black's as that which nothing can cure.

Since this Court has held that the error complained of here renders a judgment and sentence void at its inception, the Governor cannot modify that which is void. Such judgment and sentence being void, the error is incurable and any subsequent attempt at remitting the fine portion of a void sentence is also void. We hold that the Governor, though he has exclusive jurisdiction to grant commutations, is without authority to remit or commute a portion of a void sentence.

In so holding, we are cognizant of the fact that in another facially similar context we have upheld the Governor's power to commute a sentence that is legally infirm. See *Stanley v. State,* 490 S.W.2d 828 (Tex. Cr.App.1973); *Cherry v. State,* 488 S.W.2d 744 (Tex.Cr.App.1972), *cert. denied* 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973); *Whan v. State,* 485 S.W.2d 275 (Tex.Cr.App.1972), *cert. denied* 411 U.S. 934, 93 S.Ct. 1906, 36 L.Ed.2d 394 (1973). In those cases we held that the Governor does have the power to commute a death sentence to a sentence of life after the death sentence has been found to be constitutionally infirm by the United States Su-

---

**2.** All emphasis supplied by the writer of this opinion unless otherwise indicated.

**3.** The Texas Constitution, Art. 4, Sec. 11 provides:

"In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction ... to grant reprieves and commutations of punishment and pardons, and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures."

preme Court. Those cases involve reversible constitutional error; they do not involve the problem presented in this case, a judgment which is void ab initio and therefore a nullity. The judgments in *Stanley*, supra, *Cherry*, supra, and *Whan*, supra, were, for want of a better term, *voidable*, whereas the judgment in the case sub judice is *void*. Even the Governor, with his constitutional powers, may not breathe new life into a "dead" judgment.

Applicant is entitled to the relief prayed for. Applicant's judgment of conviction is vacated and applicant is entitled to a new trial. Applicant's judgment and sentence in Cause No. 81–9–3258 in the 24th district court of Jackson County is hereby vacated and applicant is ordered into the custody of the Jackson County sheriff to stand trial in said cause number.

It is so ordered.

WHITE, J., dissents.

CLINTON, Judge, concurring.

*Whan v. State*, 485 S.W.2d 275 (Tex.Cr. App.1972), was wrongly decided, and its progeny are equally wrong. See *Adams v. State*, 624 S.W.2d 568, 569–573 (Tex.Cr. App.1981) (Dissenting Opinion). Therefore, we need not strain to distinguish the judgments in those cases from the one here by calling the former "voidable" and the latter "void." The true rule in Texas is that an appellate court "may not reduce the punishment assessed by the jury," *Ocker v. State*, 477 S.W.2d 288, 290 (Tex.Cr.App. 1972), and the consequence of that rule is:

> "If the punishment was erroneously imposed, then the case stands in the same position as if the jury had failed to reach a verdict. While this Court may remand for an assessment of punishment where the punishment was originally set by the court, we may not do so where the original punishment was set by the jury."

Id., at 291. *Ellison v. State*, 432 S.W.2d 955 (Tex.Cr.App.1968).

On that basis I concur in the order granting relief.

ONION, P.J., joins.

TEAGUE, Judge, dissenting and concurring.

For the reasons expressed by Presiding Judge Onion in the dissenting opinion that he filed in *Whan v. State*, 485 S.W.2d 275 (Tex.Cr.App.1972), in which he held that the Governor of Texas may not commute any punishment assessed which, at the time of the order of commutation, was no longer in existence, I agree with the statement that Judge Clinton makes in the concurring opinion he has filed in this cause that *Whan v. State*, supra, was wrongly decided and its progeny are equally wrong. Cf. *Sellars v. Estelle*, 536 F.2d 1104 (5th Cir.1976), reh. den. 540 F.2d 1085, cert. den. 429 U.S. 1076, 97 S.Ct. 817, 50 L.Ed.2d 795 (1977), which rejected the assertions that the Governor's act of commuting a death sentence, which had been vacated by judicial fiat, to 99 years' imprisonment, denied the defendant due process and equal protection of law, deprived the defendant of his fundamental constitutional right to resentencing before a jury, and amounted to a bill of attainder. Also see the concurring opinion I filed in *Bogany v. State*, 661 S.W.2d 957, 959 (Tex.Cr.App.1983).

However, but in light of what the majority states, I am unable to agree with the statement that Judge Clinton makes in the concurring opinion he has filed in this cause, that "we need not strain to distinguish the judgments in those cases from the one here by calling the former 'voidable' and the latter 'void.' " In this instance, I believe that it is necessary that we so strain.

In this instance, when the jury assessed the applicant's punishment, the trial court had jurisdiction over the applicant, and the offense for which he was convicted of committing. I have yet to find any sound authority that would support the proposition that when a trial court has jurisdiction of the parties, and the subject matter, that because of the fact that an impermissible

punishment has been assessed, that this renders the judgment void. I believe that such a defect only causes the judgment to become voidable, and not void.

A "void judgment" is one that facially reflects the want of jurisdiction of the court over either the parties or the subject matter. Because of such defect, this renders the judgment devoid of any potency, causing it to be and to forever remain "limp as a wet dishrag." It is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights. All proceedings founded upon such a judgment are equally worthless because the judgment can never bind nor bar anyone. A void judgment closely resembles a dead limb on a tree; it can be chopped off at any time. If void, it is not even necessary to take any steps to have it reversed, vacated or set aside. Therefore, in reality, a void judgment is really no judgment, and leaves the parties litigant in the same position they were in before the trial. In summary, a void judgment is coram non judice or brutum fulmen.

The distinction between a "void judgment" and a "voidable judgment" is often overlooked. The general rule is that, where the trial court has jurisdiction of the subject-matter, and of the person affected, its judgment will not be void, though it may be erroneous. If the judgment is merely erroneous, it can be attacked and the error corrected only by a direct proceeding to set it aside, while if it be absolutely void, it is a nullity from the beginning, and may be treated as such without further proceedings to have such nullity judicially declared. However, if the defect in the judgment does not appear facially, it is not void, but only voidable. The former is brutum fulmen or coram non judice, and subject to collateral attack, whereas the latter is subject only to direct attack.[1]

The issue that was before this Court in *Bogany v. State*, supra, was not the validity of a remission order signed by the Governor of this State; instead, the issue that was before this Court was whether the Houston [First] Court of Appeals, see *Bogany v. State*, 646 S.W.2d 663 (Tex.App.-Houston [1st] 1983), had the legal authority to do what it did in that cause, namely, reform the judgment by striking any requirement of the illegal fine from the judgment. In line with what I have stated, that a defective judgment that is voidable is subject only to direct attack, this Court

1. In the eminent work on judgments, *A Treatise of the Law of Judgments*, by A.C. Freeman and Edward W. Tuttle, Fifth Edition, Volume I, Bancroft-Whitney Company, San Francisco, California, 1925, it is stated:

A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification, [among the many cases cited as authority, the Texas case of *Paul v. Willis*, 69 Tex. 261, 7 S.W. 357 is cited]. Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as for the assertion of any claim or title. It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress, [among the many cases cited for authority, the Texas case of *Hollingsworth v. Bagley*, 35 Tex. 345, is cited]. No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of elements of power or of vitality. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it therefore cannot prevent the plaintiff from proceeding to obtain a valid judgment upon the same cause, either in the action in which the void judgment was entered or in some other action. The fact that the void judgment has been affirmed on review in an appellate court [among the many cases cited for authority, the Texas case of *Chambers v. Hodges*, 23 Tex. 104, is cited], or an order or judgment reviewing or reviving it entered adds nothing to its validity. *Such a judgment has been characterized as a dead limb upon the judicial tree, which may be chopped off at any time, capable of bearing no fruit to plaintiff but constituting a constant menace to defendant.* (642–645).

reversed, see *Bogany v. State*, 661 S.W.2d 957 (Tex.Cr.App.1983), and held that the court of appeals was without legal authority to reform on direct review the judgment by deleting therefrom the void fine that had been assessed by the jury.

Thus, the issue that is before this Court in this cause does not concern either a death penalty commutation or remission of the punishment assessed by the Governor or an attempted reformation by a court of appeals where a direct attack has been made on the judgment.

What is before this Court is whether the Governor of Texas, acting pursuant to the written signed recommendation and advice of the Board of Pardons and Paroles, as provided by Art. 4, Section 11, Texas Constitution, see also Art. 48.01, V.A.C.C.P., was authorized to remit the void fine that was assessed by the jury in this cause, which jury, in addition to assessing a void fine of $10,000, also assessed a valid punishment of fifty (50) years' confinement in the penitentiary. Under the Constitution and the statute, had the fine assessed been valid, no one could or would, I believe, question the authority of the Governor to relieve the defendant of the fine assessed. E.g., *Ex parte Thomas*, 108 Tex.Cr.R. 653, 2 S.W.2d 270 (1928).

The majority holds, however, based upon some loose language that it has found in this Court's opinion of *Bogany v. State*, supra, also see *Ex parte McIver*, 586 S.W.2d 851 (Tex.Cr.App.1979), that "the Governor, though he has exclusive jurisdiction to grant commutations, was, (at the time he ordered applicant's fine remitted), without authority to remit or commute a portion of a void sentence." I am unable to agree with this holding, and would hold, barring any other facts, that what the Governor did in this cause was a valid act, thus causing the applicant's contention to become moot.

Although I am unable to agree with the majority that "the judgment in the case sub judice is void [ab initio]," and would only hold that the defect in the assessment of punishment rendered the judgment in

this cause voidable, and thus subject only to direct attack, nevertheless, because of the "snake-pit full of legal problems" that my holding might cause, I have no problem with agreeing that such defect is subject to collateral, as well as direct attack.

But because there is more in this cause than what the majority mentions, its holding that applicant was entitled to collaterally attack the defective judgment and sentence in this cause actually causes "a snake-pit full of serious legal questions" to arise.

We know that the present Constitution of Texas provides immediately after the "Bill of Rights" for Article 2, Section 1, which in turn provides: "DIVISION OF POWERS; THREE SEPARATE DEPARTMENTS; EXERCISE OF POWER PROPERLY ATTACHED TO OTHER DEPARTMENTS. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of those departments, shall exercise any power *properly attached* to either of the others, except in the instances herein expressly permitted."

Thus, because of constitutional provisions, there is an extremely fine and delicate balance in our system of government, which balance is separated by the fine line that divides our system into the three respective departments of the executive, the judiciary, and the legislative. Because Judge Clinton has adequately, but generally, discussed in the dissenting opinion that he filed in *Adams v. State*, 624 S.W.2d 568 (Tex.Cr.App.1981), the division of powers that exists between our respective departments of government, I shall not repeat here his words of wisdom. It is sufficient to state that if any department of our government interferes or attempts to interfere, either directly or indirectly, individually or jointly, with another department of our government, once that department's

power properly attaches, such act violates not only provisions of our Constitution, but the will of the people of Texas as well.

Of course, any intelligent person who has carefully read the majority opinion of *Adams,* supra, should agree with Judge Clinton's recommendation that it be expressly overruled-because it causes the judicial branch of our government to be, not an equal member, but, instead, a second class member of the triumvirate.

By virtue of Art. 1, Section 5, Texas Constitution, this Court is given, inter alia, "final appellate [criminal] jurisdiction coextensive with the limits of the state ..." And only this Court is given jurisdiction to ultimately decide post conviction writs of habeas corpus, which procedure for handling and processing is set out in Art. 11.-07, V.A.C.C.P.

In this instance, there does not appear to be any disagreement or dispute over the fact that in this cause the provisions of Art. 11.07, supra, were violated with impugnity-in order to sufficiently delay this cause in order to give the Governor the opportunity to do what he did, before this Court could judicially decide the merits of applicant's contention. The record clearly reflects that this cause was unnecessarily and without just cause delayed to prevent this Court from carrying out its constitutional and statutory duties—all in order to permit the Governor to enter an order of remission, in an effort to cure the well known defect that existed in the judgment in this cause.

It is now axiomatic that "The powers [of each department] are defined and limited; and [so] that those limits may not be mistaken, or forgotten, the constitution [was] written. To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed, are of equal obligation. It is a

proposition too plain to be contested, that the constitution controls any [executive] act repugnant to it; or, that the [executive] may alter the constitution by an ordinary act. Between these alternatives there is no middle ground. The constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and ... is alterable when [another department] shall please to alter it. If the former part of the alternative be true, then an [executive act] contrary to the constitution is not law; if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable." *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803).

In this instance, but because the judicial process had been invoked prior to the time the Governor signed the order of remission, thus, the judicial power had properly and timely attached before the Governor had acted on the request that was subsequently submitted to him to remit the applicant's fine, see Art. 2, Section 1, supra, I would vote to hold that the Governor, as head of the Executive Department of this State, exceeded his constitutional authority at the time he ordered applicant's fine remitted. Cf. *Adams v. State,* supra.

The majority, however, apparently not wanting to exercise its independent judicial authority, granted to it by the Constitution of Texas, takes a rather simplistic, but humble approach, and holds that "Even the Governor, with his constitutional powers, may not breathe new life into a 'dead' judgment." Notwithstanding my disagreement with this approach, see supra, I must ask: If the Governor of Texas can commute that which does not exist, see *Whan v. State,* supra, then why cannot he remit that which exists but is only void?

I believe that it is only through the above method that I propose that this Court can hold "that the Governor, though he has exclusive jurisdiction to grant commutations, was in this instance without lawful constitutional authority to remit a portion of a void sentence," because in this in-

stance the power that he attempted to exercise had already properly attached to the judicial department, thus precluding him to act until after this Court had finally disposed of appellant's contention that the judgment of conviction and sentence were void.

For the above and foregoing reasons, I dissent to the reasons the majority gives for granting applicant relief, but concur in its result it reaches in order to grant applicant relief.