**Ex parte Robert Allen MAY.**

**No. 69420.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 24, 1986.

George McCall Secrest, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Eleanor Montague McCarthy, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Applicant was convicted of capital murder, see V.T.C.A., Penal Code Sec. 19.-03(a)(3). Punishment was assessed at death. This Court, upon appeal, affirmed the judgment of the trial court. *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981). The United States Supreme Court vacated this Court's judgment and remanded the cause "for further consideration in light of *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)." *May v. Texas*, 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374 (1981). On April 30, 1982, before this Court considered applicant's cause, former Governor Clements signed a proclamation purporting to grant the applicant a commutation of sentence from death to life imprisonment. Because of this fact, this Court

found that error, if any, no longer existed, and affirmed the judgment of the trial court. *May v. State*, 632 S.W.2d 751, 752 (Tex.Cr.App.1982).

In his application for post-conviction writ of habeas corpus, see Article 11.07, V.A.C. C.P., applicant contends that the commutation by the Governor, as a member of the Executive Department, is a constitutional usurpation of judicial power and authority. Applicant claims that the Supreme Court's disposition in his case, i.e. remanding to this Court for further consideration, left no valid death sentence for the Governor to commute to life imprisonment.

In *Whan v. State*, 485 S.W.2d 275 (Tex. Cr.App.1972), the defendant was convicted of murder with malice aforethought, and punishment was assessed at death. The United States Supreme Court ordered "that the judgment of the Court of Criminal Appeals of Texas, insofar as it imposes the death sentence, be reversed and the cause be remanded to the Court of Criminal Appeals of the State of Texas for further proceedings." Prior to this Court's disposition of the defendant's case on remand, however, the Governor granted a commutation of the defendant's sentence from death to life. This Court held that the proper disposition of such a case was to affirm the judgment of the trial court, since the Supreme Court reversed this Court's affirmance of the trial court only insofar as the death penalty was concerned, and left the remaining portion of the defendant's case for this Court to dispose with. 485 S.W.2d at 277. Since the Governor's commutation only affected the punishment of the defendant's case, this Court reasoned, then the judgment of the case remained intact. *Id.*

■ The instant cause was in a more appropriate posture for commutation than *Whan*. In *Whan* criticism was leveled at the majority opinion[1] for approving the action of the Governor in commuting Whan's punishment "subsequent to the time the penalty had been expressly set

---

1. See Presiding Judge Onion's dissenting opinion in *Whan v. State*, supra, at page 280.

aside by the mandate of the United States Supreme Court" leaving "no punishment to commute at this point in the proceedings." Unlike *Whan,* punishment was not set aside in the instant cause by the United States Supreme Court's mandate. The Supreme Court vacated the judgment of this Court and "remanded to the Court of Criminal Appeals for further consideration in light of *Adams v. Texas* [supra]." Since the punishment assessed in the trial court was not vacated, the occasion for criticism of *Whan* is not present in the instant cause.

In light of the Governor's action in commuting punishment to life, any *Adams v. Texas,* supra, problem no longer existed.

Applicant further contends as follows: "The Applicant did not seek or request the commutation in the instant case; nor was the Applicant afforded counsel or any procedural safeguards when, acting upon patently erroneous information, the Texas Board of Pardons and Paroles recommended to the Governor that he commute the nonexistent death sentence of the Applicant to that of confinement in the Texas Department of Corrections for life. Due process of law, under both the Federal and State Constitutions, as well as Article IV, Sec. 11 of the Texas Constitution and Article 48.01, V.A.C.C.P., require adherence to procedural safeguards assuring that commutations will be granted by the sovereign only when accurate, relevant information forms the basis for the Board of Pardons and Paroles recommendations to the Governor in that regard. Because of the receipt of inaccurate and false information, and the fact that the false and inaccurate information was relied upon by the Board of Pardons and Paroles in recommending to the Governor that he commute the nonexistent death sentence in the case at bar to life imprisonment, thereby preventing the defendant from a new trial on the merits, the Applicant prays that he be granted relief."

 Based on the evidence adduced at the habeas corpus hearing, the trial court concluded that the inclusion of mistaken information in a letter from the District Attorney to the Board of Pardons and Paroles was harmless. The trial court's findings of fact on the issue and its conclusion of law are quoted in the footnote.[2] We

---

**2.** Findings of Fact:

"7. Mr. John B. Holmes, Jr., the Harris County District Attorney, in a letter to the Texas Board of Pardons and Paroles dated January 27, 1982, set forth as the reason for recommending commutation in the Applicant's case the fact that the case would be difficult to retry due to the public repudiation of his trial testimony by the primary witness, Arthur Smith, and the fact that the 'back-up hitman', William Ray Miller, who testified for the State at trial, had been killed in a prison riot in Louisiana in 1981. The written commutation recommendation of the Board of pardons and Paroles and the memorandum from the Governor's Assistant General Counsel recommending commutation recite these same reasons as grounds for their recommendation to the Governor that the Applicant's sentence be commuted to life imprisonment.

"8. William Ray Miller, the 'back-up hitman' mentioned in the commutation recommendations, was apparently not killed in a prison riot in 1981. Official records from the Louisiana correctional institution reflect that William Ray Miller was paroled from the Louisiana prison system on July 12, 1982.

"9. At the time of the evidentiary hearing, neither District Attorney Holmes, who signed the letter to the Board, nor Assistant District Attorney Ray Speece, who authored the letter to the Board, could recall where or from whom they received the information concerning the 'death' of Miller, the 'back-up hitman.' At the time the letter was written and signed, Mr. Holmes and Mr. Speece believed the information contained in the letter to be true and neither intentionally sought to promote a deliberate falsehood. The Court finds that the representations made in the letter from Mr. Holmes were made in good faith.

"10. Judge Ted Poe, currently the judge in the 228th District Court, the court of conviction, and a former prosecutor who assisted in the trial of the Applicant's cause, wrote a letter to the Board of Pardons and Paroles recommending commutation of the Applicant's sentence. At the time the letter was written, Judge Poe did not know of the supposed death of Miller. Thus, Judge Poe's recommendation that the Applicant's sentence be commuted was not based in any way on the supposed death of Miller, but instead was based on the difficulty of retrial due to the

find the record supports the trial court's findings of fact, and that the court's conclusion of law is correct.

■ Furthermore, that the commutation of sentence was imposed without the consent of the applicant or against his will, and at a proceeding at which he was not represented by counsel, does not render the commutation invalid. *Witherspoon v. State*, 486 S.W.2d 953 (Tex.Cr.App.1972); *Ex parte Lefors*, 303 S.W.2d 394 (Tex.Cr. App.1957).

■ Applicant also contends that the indictment is fundamentally defective. The indictment contains all of the constituent elements of the offense under the provisions of Section 19.03(a)(3) of the Penal Code. Applicant's contention is without merit. *McManus v. State*, 591 S.W.2d 505 (Tex.Cr.App.1979).

■ Applicant also contends that the witness Arthur Smith committed perjury when he testified at applicant's trial. The trial court found that no evidence of perjured testimony was presented by the applicant at the evidentiary hearing. The record supports the trial court's finding. Applicant has failed to prove his factual allegation by a preponderance of the evidence. *Ex parte Bates*, 640 S.W.2d 894 (Tex.Cr.App.1982).

■ Applicant contends further that Arthur Smith's recantation of his trial testi-

repudiation of testimony by the State's primary witness.

"11. Ruben Torres, chairman of the Texas Board of Pardons and Paroles, testified at the evidentiary hearing that since the death penalty was reinstated in Texas, in each case where a majority of the trial officials have requested a commutation of sentence, the Board has recommended commutation to the Governor; that since the death penalty was reinstated, the Board has recommended 32 commutations to the Governor; and that of the 32 cases recommended for commutation by the Board, the Governor has granted commutation in each case. Mr. Torres further testified that the Board would have recommended commutation to the Governor even absent the extreme fact of a witness being killed; and that the difficulty of retrial due to the recantation of the testimony of a primary witness would have been a sufficient reason for the Board to recommend commutation to the Governor.

"12. The Court finds that the affidavit of Arthur Smith, attached as an exhibit to the Applicant's application for writ of habeas corpus, is not credible. The Court finds untrue: the assertions in Smith's affidavit that he was told by Detective Hoffmaster of the Houston Police Department and Bob Shults, an Assistant District Attorney at the time of trial, to testify falsely in order to convict the Applicant; that Detective Hoffmaster paid Smith to lie during the Applicant's trial; that Hoffmaster promised Smith he would not receive more than twenty (20) years, that Smith would make his first parole, and that Smith would be sent to the Walls unit or the Wynne farm; and that Mr. Shults told Smith he could not have a jury trial. When called to the stand by the Applicant at the evidentiary hearing, Arthur Smith refused to testify, asserting his Fifth Amendment privilege against self-incrimination.

"13. The Court finds the testimony of Bob Shults and Detective Hoffmaster to be credible. The Court finds that Mr. Shults and Detective Hoffmaster never told Arthur Smith what to testify to at the Applicant's trial; never threatened Smith; did not promise Smith a lighter sentence if he would lie against the Applicant; did not promise Smith he would receive less than twenty (20) years; did not promise to send Smith to any specific prison unit; did not promise to send Smith money if he would lie at the Applicant's trial; never promised Smith he would make his first parole; and did not tell Smith he could not have a jury trial."

Conclusion of Law:

"6. This Court finds to be harmless the inclusion of mistaken information in the letter requesting commutation from the District Attorney's Office and the subsequent commutation requests from the Board of Pardons and Paroles and the Governor's Office. The testimony adduced at the evidentiary hearing indicates that a commutation request based solely on the difficulty of retrial due to the recantation of testimony by a primary witness would have been a sufficient ground for commutation. Thus, even totally disregarding the erroneous information concerning the 'back-up hitman,' the other factors contributing to the difficulty of retrial of the Applicant's case would have resulted in the granting of a commutation. Additionally, from the statistics quoted by the Chairman of the Board of Pardons and Paroles at the evidentiary hearing, it can be assumed that if a majority of the trial officials had requested commutation based solely on the general reason of difficulty of retrial, without specifying particular difficulties, the Board would have recommended commutation and the Governor would have granted commutation."

mony requires that he be granted habeas corpus relief. The existence of newly discovered evidence relevant to the guilt of the applicant is not a ground for relief in a post-conviction writ of habeas corpus. *Ex parte Binder*, 660 S.W.2d 103 (Tex.Cr.App. 1983).

The relief prayed for is denied.

WHITE, J., concurs in the result.

CLINTON, Judge, dissenting.

Applicant was convicted of the capital offense of murder for remuneration and his punishment was assessed at death. On appeal this Court affirmed the judgment of the trial court by opinion dated May 20, 1981. *May v. State*, 618 S.W.2d 333 (Tex. Cr.App.1981). No mandate issued from this Court; hence, at that time sentence was not pronounced.[1] On November 2, 1981 the United States Supreme Court vacated this Court's judgment and remanded the cause for "further consideration in light of *Adams v. Texas*, 448 U.S. 38 [100 S.Ct. 2521, 65 L.Ed.2d 581] (1980)." Before this Court could so consider, a proclamation was signed, on April 30, 1982, by then Governor William P. Clements, Jr., purporting to grant applicant a commutation of "sentence" from death to life imprisonment. As it did on remand from the Supreme Court in *Adams v. State*, 624 S.W.2d 568 (Tex.Cr.App.1981), this Court, finding "no death sentence upon which to exercise its power," *id.*, at 569, was compelled to again affirm the judgment of the trial court. *May v. State*, 632 S.W.2d 751 (Tex. Cr.App.1982).

In this application for writ of habeas corpus filed pursuant to Article 11.07, V.A. C.C.P., applicant contends, *inter alia*, that commutation by the Executive Department "where there is not a sentence, or even a valid assessment of punishment," *Adams*, 624 S.W.2d at 573 (Clinton, J., dissenting), amounts to an unconstitutional usurpation of judicial power and authority. Because the Court rejects his contention with untenable rationale, I respectfully dissent for the following reasons.

In *Whan v. State*, 485 S.W.2d 275 (Tex. Cr.App.1972), Article IV, Section 11 of the Texas Constitution and Article 48.01, V.A. C.C.P. were construed to authorize executive commutation at any time after punishment has been assessed. It was reasoned that (1) because "after conviction" as applied to the executive power to pardon has been interpreted to mean after a verdict of guilty has been pronounced, which interpretation is supported by provision in Article 42.07, V.A.C.C.P. listing pardon as an impediment to pronouncement of sentence; and (2) because "[t]he Governor's authority to grant commutations arises from the same Article of the Constitution as does his authority to gant pardons[,]" it therefore follows that a commutation would be valid if imposed at any time "after conviction," or at least after punishment has been assessed, regardless of whether sentence has been pronounced.[2]

---

**1.** Prior to amendment in 1981, Article 42.02, V.A.C.C.P., provided that "[w]hen an appeal is taken from a death penalty, sentence shall not be pronounced, but shall be suspended until the decision of the Court of Criminal Appeals has been received."

**2.** Former Article 42.02, V.A.C.C.P. read:

"A 'sentence' is the order of the court in a felony or misdemeanor case made in the presence of the defendant ... and entered of record, pronouncing the judgment, and ordering the same to be carried into execution in the manner prescribed by law."

As amended by Acts 1981, 67th Leg., p. 809, ch. 291, § 112, eff. September 1, 1981, the statute now reads:

"The sentence is that part of the judgment ... that orders that the punishment be carried into execution in the manner prescribed by law."

Further, § 113 of the same Act amended Article 42.03, § 1 to delete the requirement that sentence be pronounced "at any time after expiration of the time allowed for making the motion for a new trial or the motion in arrest of judgment," *viz:* ten days. See Articles 40.05 and 41.02, prior to amendment by §§ 107 and 110, respectively, of the foregoing Act. Thus, sentence is now incorporated within the judgment. *Patterson v. State*, 650 S.W.2d 453, 456 (Tex.App. —Houston [14th] 1982) pet. ref'd.

Accordingly, Article 42.04 was amended, by § 114, such that when the death penalty is assessed, sentence will be imposed, but "no date

The conclusion reached in *Whan*, however, does *not* "follow" its premises; as was demonstrated in *Graham v. State*, 643 S.W.2d 920, 932–934 (Tex.Cr.App.1983) (Clinton, J., dissenting) (On State's motion for rehearing):

"Commutation is 'an executive act reducing the term of *sentence* already imposed and substituting a lesser for the greater punishment,' 67A C.J.S. § 4, p. 7; Black's Law Dictionary (Rev. Fourth Ed. 1968) 351. Thus, the constitutional term 'after conviction' is of little moment with respect to commutation, for that kind of executive clemency simply may not attach 'before conviction.' 'Commutation is ... an act appropriate for reducing existing sentences ...,' 67A C.J.S. § 33b, p. 44. [emphasis in original] [3]

On the other hand, unless otherwise restricted a pardon may be granted by proper authority at any time—even before a criminal charge has been lodged against the offender. [footnote omitted] 67A C.J.S. § 12, p. 18. In Texas, however, when expressly limited, exercise of the power to pardon has always been restricted to 'after conviction.' [6] But that constitutional limitation is surely a reflection of a policy decision made by the people of Texas on the matter of timing valid exercise of the power to pardon. [footnote omitted] Rather than permitting the Executive Department to grant pardons before charge is made, before indictment is returned, before trial begins, before jury verdict, the Constitution restricts the grant to that point in the criminal prosecution which is 'after conviction.' And there has never been any intimation that such restriction on timing is part of a definition of what constitutes a pardon. [footnote omitted]

So, *Whan* is quite correct in perceiving that Article 42.07, V.A.C.C.P., 'indicates that a pardon is valid even if granted before sentence.' That article provides— as its predecessors did back to the for-

mer Article 688 in the 1857 procedural code—one reason to prevent *sentence* is:

'1. That the defendant has received a pardon from the proper authority, on the presentation of which, legally authenticated, he shall be *discharged.*' [emphasis in original]

That reason obviously contemplates only a pardon in the classic sense, one which absolves from punishment and 'whatever else the law has provided,' *Carr v. State*, [19 Cr.R. 635 (Ct.App.1885)], at 657, and the mandate of discharge clearly excludes operation of a commutation order. There is not the slightest suggestion in Article 42.07, or elsewhere, that receiving commutation is a reason the defendant may advance to prevent sentence.

*Whan* also observed that the authority bestowed on the Governor to grant commutations 'arises from the same Article of the Constitution as does his authority to grant pardons.' But the observation, while absolutely accurate, is pointless. As already shown *ante*, the constitutional provision is a matter of timing exercise of pardoning power, not a matter of defining the kinds of executive clemency mentioned in the section. Indeed, except for pardons the term 'after conviction' is redundant for the other kinds, facially or by definition, necessarily require conviction and punishment. [footnote omitted] Neither reprieve, commutation, fine nor forefeiture precedes a finding of guilty or 'conviction,' and the authority of the Governor to grant any of those kinds of clemency could have been provided effectively anywhere in Article IV—or anywhere in the Constitution—without the words 'after conviction.'

Thus, the conclusion reached in *Whan* does not 'follow' its premises. Furthermore, omitted from its analysis are pertinent factors that seem to have been overlooked.

The functional distinction between a pardon and commutation, along with oth-

---

shall be set for the execution of sentence until after the receipt by the clerk of the trial court of the mandate of the court of criminal appeals."

**3.** All other emphasis is supplied by the writer of this opinion unless otherwise indicated.

er kinds of executive clemency, has been legislatively and administratively provided. In Article 42.12, § 25, V.A.C.C.P., the Legislature authorized the Board of Pardons and Paroles (Board) to 'investigate and report to the Governor with respect to any person being considered by the Governor for … commutation of *sentence.*' [emphasis in original] In turn, the Board, with another grant of authority to do so, *id.,* at § 18, has adopted rules pertaining to its investigative and reporting functions in this respect, within the constraints of its own definition, *viz:*

' *"Commutation of sentence"* means .an act of clemency by the governor which serves to modify the conditions of a *sentence.*' [10] [emphasis in original]

Constitutionally and statutorily, the Governor may not commute (or pardon, for that matter) except on the written signed recommendation of the Board. Article IV, § 11, supra, and Article 48.01, V.A.C.C.P. By statute and its own rules the Board is authorized to make its recommendation for commutation of *sentence* only. It follows that assessed punishment is not subject to commutation in advance of sentence [emphasis in original]."

---

6. Plan and Powers of the Provisional Government of Texas, Article VII, 3 Vernon's Texas Constitution 513: ' … and the penalties prescribed by said law, in case of conviction, shall be inflicted, unless the offender shall be pardoned, or fine remitted; for which purpose a reasonable time shall be allowed to every convict to make application to the Governor and Council.' Constitution of 1836, Article VI, § 4, *id.,* at 529: 'He shall have power to remit fines and forfeitures, and to grant reprieves and pardons …' Constitution of 1845, Article V, § 11, *id.,* at 555: ' … he shall have power, after conviction, to grant reprieves and pardons; and under such rules of the Legislature may prescribe, he shall have power to remit fines and forfeitures; [sic] accord: Constitution of 1861, Article V, § 11, *id.,* at 584; Constitution of 1866, Article V, § 11, *id.,* at 614; Constitution

4. Aside from the novelty of relying upon an interpretation made by a single judge in a dissenting opinion of the effect of a remand order by the Supreme Court, that the majority does

of 1869, Article IV, § 11 *id.,* 651; Constitution of 1876, Article IV, § 11, as originally adopted, *id.,* at 798, which for the first time mentioned 'commutations.'

10. Rules, § 141.111(.005) …

In the instant case, at the time the purported proclamation commuting applicant's "sentence" issued, though punishment had been assessed, sentence had not yet been pronounced, pursuant to then Articles 42.-02 and 42.04, V.A.C.C.P. See nn. 1 and 2, *ante.* The trial court's docket reflects that sentence was pronounced only after this Court affirmed the conviction for the second time, and mandate issued, following the purported commutation. There having been no sentence to which commutation could attach, however, the Governor's proclamation had no force or effect whatever.

The majority does not challenge my analysis of flawed reasoning in *Whan.* Rather it contrasts language used by the Supreme Court in its respective remand orders in *Whan* and *May* and perceives some substantive difference in impact of those orders on the judgments of this Court and the judgment of the trial courts. With that perception and because the *dissent* in *Whan* said "the penalty had been expressly set aside … leaving no judgment to commute at this point in the proceedings," the majority seems to believe that the Supreme Court *did* set aside "punishment" in *Whan* but *did not* vacate "the punishment assessed by the trial court" in *May.*[4] However, the notion is at odds with the opinion of the Court in *Adams v. State,* 624 S.W.2d 568 (Tex.Cr.App.1981), similarly rendered on summary reversal and remand from the Supreme Court. Relying solely on *Whan* the Court opined that summary reversal "has no direct effect on the yet unaltered judgment of the trial court," and it was that adjudication by the trial court which the Governor ordered commuted to life imprisonment "before the judicial sequence [reached the punishment]." *Id.,* at 569. For purposes of commutation, then,

not even attempt to justify views expressed in the opinion of the *Whan* court lends strength to the verity of my own analysis.

the view was that punishment in the trial court had *not* been set aside or vacated.

Therefore, the majority here errs in its purported distinction with *Whan*, as explicated by *Adams*. They were decided on a finding that the death penalty assessed in the judgment of the trial court could be commuted by the Governor prior to final decision by this Court, and that issue is ignored by the majority here in favor of an erroneous distinction between this cause and *Whan*.

While perhaps not functionally equivalent, close observers of the Supreme Court do not see the kind of substantive difference *vis a vis* a judgment of a state appellate court made by the majority between summarily reversing a judgment and ordering a remand, on the one hand, and summarily vacating a judgment and ordering a remand, on the other. Indeed, which action is taken appears to be merely a matter of developing preference in the Supreme Court.[5]

In *Whan* the cause was remanded to this Court "for further proceedings," in *May* "for further consideration." In neither did the Supreme Court purport to set aside or vacate the judgment of the trial court, and the rationale of each is that the trial court judgment remained unscathed. As each remand order is worded, both affect only the judgment of affirmance rendered by this Court—not at all the judgment of conviction entered by the trial court; however,

under former Article 42.02, supra, the latter is without force and effect so long as an appeal is still suspended pending the opinion, judgment and mandate of this Court after the appellate process has run its course. The vice of *Whan* and *Adams* is in finding that a judgment of trial court assessing the death penalty, then suspended by appeal, remains viable enough to be susceptible to commutation to life imprisonment though final disposition of that judgment has yet to be determined by this Court.[6]

In nevertheless giving effect to the Governor's proclamation, and affirming applicant's conviction on the basis that the purported commutation removed any error from the case, 632 S.W.2d at 752, this Court abdicated to the Executive Department a power properly attached to the Judicial Department, since "it, and it alone, has *jurisdiction* to adjudicate guilt, assess punishment and impose sentence on persons accused of felonies; see *Lott v. State*, 18 Tex.App. 627 (1885) and see generally *Ex parte Cannon*, 546 S.W.2d 266 (Tex.Cr. App.1976) (Concurring opinion of Odom, J.)." *Adams*, supra, at 571 (Clinton, J., dissenting).

I would now reclaim that power and order applicant's cause reinstated to the docket of this Court, for that "further consideration" mandated by the United States Supreme Court. New briefs should be filed, opportunity for oral argument ex-

5. See, e.g., R.L. Stern, E. Gressman & S.M. Shapiro, *Supreme Court Practice* (Sixth Edition) at 279, *viz:*

"Studies have shown a marked decline in recent years in the numbers of these summary reversals and affirmances. [footnotes omitted throughout] ... [T]hey have become rarities since 1971. In large part, the Court seems to have abandoned the task of deciding whether one of its recent precedents requires reversal or affirmance of other lower court judgments, rendered prior to the new precedent and involving identical or similar issues. The court now prefers to delegate the task to the lower courts, remanding the cases to them for reconsideration in light of the new Court precedent."

6. Though sentence of death had not been pronounced in the trial court, the *Whan* majority

believed—erroneously, as I have demonstrated *ante*—that mere assessment of punishment in the trial court is "subject to commutation" by the Governor. It found that "imposition of the death penalty is no longer possible by virtue of [that] commutation"—not by virtue of summary reversal of the judgment of this Court "insofar as it imposes the death sentence." Thus, on a fanciful idea that a judgment of the trial court assessing punishment at death was extant, *Whan* and *Adams* permitted executive commutation to control disposition of the cause while it was "still pending before this Court." *Whan*, supra, at 276–277; *Adams*, supra, at 569. On remand of this cause that is the reason given by a majority of the Court for affirming the judgment of the trial court—as reformed by the commutation order issued by Governor Clements. *May*, supra.

92

tended, and the cause resubmitted for reconsideration of applicant's original grounds of error asserting that prospective jurors R.L. Schlosser, Clarence Ellis and D.C. Merdian were improperly excused in light of *Adams v. Texas*, supra.

To the extent that they conflict with this opinion, *Whan v. State*, supra, and its progeny should be overruled.

TEAGUE and CAMPBELL, JJ., join this opinion.