James Ray PARKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 58329.

Court of Criminal Appeals of Texas, En Banc.

April 20, 1983.

Michael E. Grimes, Round Rock, for appellant.

Edward J. Walsh, Dist. Atty., Georgetown, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Douglas M. Becker, Leslie A. Benitez, Asst. Attys. Gen., Austin, for the State.

## OPINION ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

ONION, Presiding Judge.

This appeal stems from a conviction for burglary of a habitation with intent to commit rape. Punishment, enhanced under V.T.C.A., Penal Code, § 12.42(c), by allegation and proof of a prior felony conviction, was assessed by the jury at ninety-nine (99) years. On original submission the conviction was affirmed. This court overruled, inter alia, appellant's four grounds of error contending the trial court reversibly erred in refusing to suppress the testimony before the jury of Dr. John Holbrook, a psychiatrist, who testified for the State as a rebuttal witness on the issue of insanity as a defense at the guilt stage of the trial. See *Parker v. State,* 594 S.W.2d 419 (Tex.Cr. App.1980).

A writ of certiorari was granted by the United States Supreme Court, our judgment was vacated and this case remanded for further consideration in light of *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). See *Parker v. Texas,* 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981). This non-capital burglary conviction was remanded in company of a number of capital murder convictions where the death penalty was imposed. *Wilder v. Texas,* 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 987 (1981); *Armour v. Texas,* 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 987 (1981); *Garcia v. Texas,* 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 988 (1981); *Simmons v. Texas,* 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981); *Brandon v. Texas,* 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981). This appears to be the only non-capital case remanded to this court for further consideration in light of *Estelle v. Smith,* supra, where the court granted certiorari "to consider whether the prosecution's use of psychiatric testimony at the sentencing phase of respondent's capital murder trial to establish his future dangerousness violated his constitutional rights." 101 S.Ct. at p. 1869.

The Supreme Court in *Estelle v. Smith,* supra, speaking through its Chief Justice, held that where, prior to the in-custody psychiatric examination ordered by the court to determine the defendant's competency to stand trial, the defendant had not been warned that he had the right to remain silent and that any statement made could be used against him at the sentencing proceeding, etc., admission at the penalty phase of a capital felony trial of psychiatrist's damaging testimony on the crucial issue of future dangerousness violated the Fifth Amendment privilege against compelled self-incrimination because of a lack of appraisal of rights and a knowing waiver thereof, the death penalty imposed could not stand.

The court further held that the Sixth Amendment's right to counsel was violated where defense counsel was not notified in advance that the psychiatric examination would encompass the issue of future dangerousness and there was no affirmative waiver of the right to counsel.

Both the Fifth and Sixth Amendments are applicable to the states by virtue of the Fourteenth Amendment. See *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

In the *Smith* case the district judge, on his own motion, appointed Dr. James Grigson to examine the defendant Smith on the issue of his competency to stand trial. See Article 46.02, V.A.C.C.P. Dr. Grigson examined Smith without giving any warnings regarding his Fifth Amendment privilege against self-incrimination and did not notify the defense counsel that the psychiatric examination would encompass the issue of the defendant's future dangerousness, nor was the defendant accorded the assistance of counsel in determining whether to submit to such examination, etc.

After the examination, Dr. Grigson reported to the court that Smith was competent to stand trial. The case went to trial with no question being raised as to Smith's competency to stand trial or as to the defensive issue of insanity. After Smith was convicted at the guilt stage of the bifurcated trial for capital murder, Dr. Grigson was called by the State at the penalty stage of the trial to testify that, based upon his examination, he considered Smith a severe sociopath who would commit violent acts in the future "if given the opportunity to do so." The jury subsequently returned affirmative answers to the special issues submitted under Article 37.071(b), V.A.C.C.P., and the trial court assessed the death penalty in accordance with the law. The convic-

tion was affirmed by this court in *Smith v. State,* 540 S.W.2d 693 (Tex.Cr.App.1976).

Having exhausted his state remedies, Smith sought federal habeas corpus relief and prevailed in the United States District Court. *Smith v. Estelle,* 445 F.Supp. 647 (N.D.Tex.1977). The Fifth Circuit Court of Appeals affirmed though modifying the decision below. *Smith v. Estelle,* 602 F.2d 694 (5th Cir.1979). Subsequently the United States Supreme Court affirmed the Fifth Circuit opinion as earlier noted.

In affirming the lower court the Supreme Court in Smith noted that Smith's future dangerousness was a critical issue at the penalty stage of the capital murder trial, and one upon which the State had the burden of proof beyond a reasonable doubt [see Article 37.071(b) and (c), V.A.C.C.P.]; that the State, to meet its burden, used Smith's own statements unwittingly made without an awareness that he was assisting the State's efforts to obtain the death penalty.

In *Smith* the Supreme Court in concluding that the Fifth Amendment privilege was implicated wrote:

"In *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966), the Court acknowledged that 'the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves.' *Miranda* held that 'the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.' *Id.,* at 444, 86 S.Ct., at 1612. Thus, absent other fully effective procedures, a person in custody must receive certain warnings before any official interrogation, including that he has a 'right to remain silent' and that 'anything said can and will be used against the individual in court.' *Id.,* at 467–469, 86 S.Ct., at 1624–1625. The purpose of these admonitions is to combat what the Court

saw as 'inherently compelling pressures' at work on the person and to provide him with an awareness of the Fifth Amendment privilege and the consequences of foregoing it, which is the prerequisite for 'an intelligent decision as to its exercise.' *Ibid.*

"The considerations calling for the accused to be warned prior to custodial interrogation apply with no less force to the pretrial psychiatric examination at issue here. Respondent was in custody at the Dallas County Jail when the examination was ordered and when it was conducted. That respondent was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government information, or prosecuting attorney, is immaterial. When Dr. Grigson went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a post-arrest custodial setting. During the psychiatric evaluation, respondent assuredly was 'faced with a phase of the adversary system' and was 'not in the presence of [a] person[] acting solely in his interest.' *Id.,* at 469, 86 S.Ct., at 1625. Yet he was given no indication that the compulsory examination would be used to gather evidence necessary to decide whether, if convicted, he should be sentenced to death. He was not informed that, accordingly, he had a constitutional right not to answer the questions put to him.

"The Fifth Amendment privilege is 'as broad as the mischief against which it seeks to guard,' *Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892), and the privilege is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence.' [11] *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct.

1489, 1493–1494, 12 L.Ed.2d 653 (1964). We agree with the Court of Appeals that respondent's Fifth Amendment rights were violated by the admission of Dr. Grigson's testimony at the penalty phase.[12]

"A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to Dr. Grigson to establish his future dangerousness. If, upon being adequately warned, respondent had indicated that he would not answer Dr. Grigson's questions, the validly ordered competency examination nevertheless could have proceeded upon the condition that the results would be applied solely for that purpose. In such circumstances, the proper conduct and use of competency and sanity examinations are not frustrated, but the State must make its case on future dangerousness in some other way.

" 'Volunteered statements ... are not barred by the Fifth Amendment,' but under *Miranda v. Arizona,* supra, we must conclude that, when faced while in custody with a court-ordered psychiatric inquiry, respondent's statements to Dr. Grigson were not 'given freely and voluntarily without any compelling influences' and, as such, could be used as the State did at the penalty phase only if respondent had been apprised of his rights and had knowingly decided to waive them. *Id.,* [384 U.S.] at 478, 86 S.Ct., at 1630. These safeguards of the Fifth Amendment privilege were not afforded respondent and, thus, his death sentence cannot stand."

"11 While recognizing that attempts to coerce a defendant to submit to psychiatric inquiry on his future dangerousness might in-

clude the penalty of prosecutorial comment on his refusal to be examined, the Court of Appeals noted that making such a remark and allowing the jury to draw its own conclusions 'might clash with [this Court's] insistence that capital sentencing procedures be unusually reliable.' 602 F.2d, at 707. See also *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

"12 For the reasons stated by the Court of Appeals, we reject the State's argument that respondent waived his Fifth Amendment claim by failing to make a timely, specific objection to Dr. Grigson's testimony at trial. See 602 F.2d, at 708, n. 19. In addition, we note that the State did not present the waiver argument in its petition for certiorari. See this Court's Rule 40(1)(d)(2) (1970)."

In the instant burglary case appellant's court-appointed counsel filed a request for a psychiatric evaluation both as to competency to stand trial and sanity at the time of the alleged offense. The State likewise filed a request for the appointment of a psychiatrist. By agreement of the parties the court appointed Dr. Richard Coons to make a psychiatric evaluation. The appellant also requested a competency hearing, and filed a "Notice of Intention to Raise Insanity Defense." See Article 46.03, V.A. C.C.P.

After Dr. Coons' report that appellant was legally insane at the time of the alleged offense, the State, without court order, had the appellant examined in jail by Dr. John Holbrook, whose findings were contrary to that of Dr. Coons.

The request for a competency hearing was not pursued, it being Dr. Coons' opinion appellant was competent to stand trial. Appellant's counsel sought to suppress Dr. Holbrook's testimony by pre-trial motion. He was unsuccessful, but the court ordered a copy of Holbrook's report delivered to appellant as soon as it was received by the State. The copy was delivered on the morning of the trial, the State asserting it had just received the same.

The appellant entered a plea of not guilty when the trial commenced. After the State had rested its case-in-chief on the merits, the appellant interjected the insanity defense by calling Dr. Coons, who testified before the jury that appellant was legally insane at the time of the commission of the alleged offense. Dr. George Parker, a psychologist, was called for the defense and supported Dr. Coons' conclusion.

In rebuttal the State called Dr. Holbrook. The objections were that Holbrook had not been appointed by the court in accordance with Article 46.03, supra, which was the exclusive procedure for an accused to be examined by a psychiatrist, and that while Holbrook was licensed to practice medicine in Texas with his certificate on file in Brazos and Dallas Counties, it was not on file in Williamson County, where the trial took place. The objections were overruled. There were no objections that appellant's Fifth and Sixth Amendment rights had been violated. Holbrook then testified that in his opinion, based on his examination, the appellant was sane on the date of the alleged offense.

The court submitted the issue of insanity as a defense to the jury under appropriate instructions telling the jurors the burden of proof of such affirmative defense was upon the appellant by a preponderance of the evidence.

While not necessarily decisive on any issue, we note the instant case was a non-capital felony case of burglary to which the appellant entered a plea of not guilty after giving notice of intention to rely upon an insanity defense, and initiated the defense by calling witnesses in support thereof. The burden of proof by a preponderance of evidence was upon the appellant at the guilt stage of the trial as to this defensive issue. Appellant's counsel knew at the time of trial of appellant's examination by Holbrook and had Holbrook's report prior to offering insanity defense. He knew or should have known that Holbrook would likely be a prosecution witness prior to offering testimony supporting the defense.

In *Smith*, a capital murder felony case, the special issue of future dangerousness [Article 37.071(b)(2), V.A.C.C.P.] at the penalty stage of the trial was to be submitted to the jury under the Texas capital murder procedure. It was an issue upon which the State had the burden of proof beyond a

reasonable doubt. While Dr. Grigson had examined Smith by order of court, sua sponte, to determine competency to stand trial, there was no competency hearing and no issue of insanity as a defense was raised at the guilt stage of the trial. Grigson was not on the list of witnesses and his appearance as a witness for the prosecution at the penalty stage of the trial to establish future dangerousness was a surprise to Smith's counsel.

Further, in *Smith* the Supreme Court stated:

"... Dr. Grigson's diagnosis, as detailed in his testimony, was not based simply on his observation of respondent. Rather, Dr. Grigson drew his conclusions largely from respondent's account of the crime during their interview and he placed particular emphasis on what he considered to be respondent's lack of remorse. Dr. Grigson's prognosis as to future dangerousness rested on statements respondent made, and remarks he omitted, in reciting the details of the crime. The Fifth Amendment privilege, therefore, is directly involved here because the State used as evidence against respondent the substance of his disclosures during the pretrial psychiatric examination."

In contrast, an examination of Dr. Holbrook's testimony in the instant case reflects that his evaluation of the appellant and his expressed opinion were not based on or even related to the appellant's version of the alleged offense.

More importantly, the Supreme Court in *Smith* wrote:

"Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. *When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case.* Accordingly, several Courts of Appeals have held that, under the circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist." (Citations omitted.) (Emphasis supplied.)

In *Battie v. Estelle,* 655 F.2d 692, 700, 701–702 (5th Cir.1981), the Court wrote:

"The use of a psychiatric or psychological examination to determine a defendant's competency to stand trial is a separate matter as far as the fifth amendment privilege is concerned....

"However, when the same type of examination is used to determine a defendant's culpability or responsibility for the crimes charged against him the fifth amendment privilege is involved because the use of a psychiatric or psychological examination in this context may assist the State in establishing the basis for imposition of a criminal punishment. This use of psychiatric or psychological testimony can arise in a variety of situations. One such situation was present in Smith. * * * A different situation was present in *United States v. Cohen,* 530 F.2d 43 (5th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976). In *Cohen,* the federal government used the results of a court-appointed psychiatric examination only after the defense had introduced psychiatric testimony in order to raise a mental defense. In this situation, *this Court held that the introduction by the defense of psychiatric testimony constituted a waiver of the defendant's fifth amendment privilege in the same manner as would the defendant's election to testify at trial.* Cohen, like virtually every other federal and state court addressing this issue, concluded that any burden imposed on the defense by this result is justified by the State's overwhelming difficulty in responding to the defense psychiatric testimony without its own psychiatric examination of the accused and by the need to prevent fraudulent mental defenses." (Emphasis supplied.)

There may not be a waiver of the Fifth Amendment privilege by a defendant's mere submission to a psychiatric or psychological examination when he does not intro-

duce the testimony of a mental health expert relevant to the offense or a defense raised by the evidence in the case, *Battie v. Estelle,* supra, at p. 702, but he does waive it when, as in the instant case, he introduces mental health experts in support of his insanity defense. See *Cohen v. United States,* supra.

■ While there may be other grounds for reaching the same conclusion, we hold that the appellant had waived his fifth amendment privilege and the affirmance of this case need not be reconsidered on any violation of that privilege.

In discussing the Sixth Amendment contention, the Supreme Court in *Smith* wrote:

"When respondent was examined by Dr. Grigson, he already had been indicated (sic) and an attorney had been appointed to represent him. The Court of Appeals concluded that he had a Sixth Amendment right to the assistance of counsel before submitted to the pretrial psychiatric interview. 602 F.2d, at 708–709. We agree.

"The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.' The 'vital' need for a lawyer's advice and aid during the pretrial phase was recognized by the Court nearly 50 years ago in *Powell v. Alabama,* 287 U.S. 45, 57, 71, 53 S.Ct. 55, 60, 65, 77 L.Ed. 158 (1932). Since then, we have held that the right to counsel granted by the Sixth Amendment means that a person is entitled to the help of a lawyer 'at or after the time that adversary judicial proceedings have been initiated against him . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' *Kirby v. Illinois,* 406 U.S. 682, 688–689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion); *Moore v. Illinois,* 434 U.S. 220, 226–229, 98 S.Ct. 458, 463–465, 54 L.Ed.2d 424 (1977). And in *United States v. Wade,* 388 U.S. 218, 226–227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967), the Court explained:

" 'It is central to [the Sixth Amendment] principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.' (Footnote omitted.)

See *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). See also *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

"Here, respondent's Sixth Amendment right to counsel clearly had attached when Dr. Grigson examined him at the Dallas County Jail, and their interview proved to be a 'critical stage' of the aggregate proceedings against respondent. See *Coleman v. Alabama,* 399 U.S. 1, 7–10, 90 S.Ct. 1999, 2002–2004, 26 L.Ed.2d 387 (1970) (plurality opinion); *Powell v. Alabama,* supra, 287 U.S., at 57, 53 S.Ct., at 60. Defense counsel, however, were not notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed.

"Because '[a] layman may not be aware of the precise scope, the nuances, and the boundaries of his Fifth Amendment privilege,' the assertion of that right 'often depends upon legal advise from someone who is trained and skilled in the subject matter.' *Maness v. Meyers,* 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975). As the Court of Appeals observed, the decision to be made regarding the proposed psychiatric evaluation is 'literally a life or death matter' and is 'diffi-

cult ... even for an attorney' because it requires 'a knowledge of what other evidence is available, of the particular psychiatrist's biases and predilections, [and] of possible alternative strategies at the sentencing hearing.' 602 F.2d, at 708. It follows logically from our precedents that a defendant should not be forced to resolve such an important issue without 'the guiding hand of counsel.' *Powell v. Alabama,* supra, 287 U.S., at 69, 53 S.Ct., at 64.

"Therefore, in addition to Fifth Amendment considerations, the death penalty was improperly imposed on respondent because the psychiatric examination on which Dr. Grigson testified at the penalty phase proceeded in violation of respondent's Sixth Amendment right to the assistance of counsel." (Citations omitted.)

 In the instant case the appellant had been indicted and had appointed counsel by the time of the psychiatric examination by the State's psychiatrist, Dr. Holbrook. The right to counsel had clearly attached at this time. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Estelle v. Smith,* supra. While the record was not clearly developed, it appears that Dr. Holbrook's interview was conducted without notice to appellant's counsel and while appellant was in jail. The interview could have been a critical stage of the proceedings against the appellant. Appellant was entitled to counsel to protect his Fifth Amendment rights.[1]

Was the denial of counsel to protect appellant's Fifth Amendment rights in this non-capital case reversible error? We do not so conclude.

Appellant initiated a request for psychiatric examination, and when he got a favorable doctor's report, he gave notice of intention to pursue an insanity defense. Appellant's counsel filed a pre-trial motion to suppress the Holbrook report, indicating his knowledge of the interview. He was unsuccessful but got a copy of the report as soon as the State received it on the day of trial and two days before Dr. Holbrook's testimony. After the State rested its case-in-chief at the guilt stage of the trial, appellant, apparently with advice of counsel, proceeded with psychiatric and psychological testimony in support of his defense, knowing that the State would undoubtedly call Dr. Holbrook in rebuttal. And when called, Dr. Holbrook was cross-examined by appellant's counsel.

As we earlier noted, appellant by his actions waived his Fifth Amendment privilege against self-incrimination with regard to his insanity defense. We cannot conclude, under the circumstances, that the denial of the Sixth Amendment right to counsel, prior to the psychiatric examination limited to the issue of insanity at the time of the alleged offense, resulted in reversible error. It would be absurd to hold that appellant waived his Fifth Amendment rights but he could still use the denial of his Sixth Amendment right to counsel to protect his Fifth Amendment right to prevent the State from using rebuttal testimony arising out of the flawed interview.

Even if this was not true, it is observed that at the time of trial there was no objection offered to Dr. Holbrook's testimony on the basis there had been a violation of either the Fifth or Sixth Amendments. There was not even such a contention on the original submission of this appeal.

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), the United States Supreme Court recognized valid state interests in adopting procedural rules requiring defendants to make contemporaneous objections to objectionable matters at trial in order to subsequently secure federal habeas corpus review of those matters.

---

1. This does not mean that there is any constitutional right to have counsel actually present during the examination, *Estelle v. Smith,* supra, note 14, 101 S.Ct. at p. 1877. It refers to the fact that the Sixth Amendment right to the assistance of counsel is abridged when a defendant is not given prior opportunity to consult with counsel about his participation in the psychiatric examination.

In *Wainwright v. Sykes,* supra, the Court stated:

"The failure of the federal habeas corpus courts generally to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification." 433 U.S. at 90, 97 S.Ct. at 2508.

In *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court recently held that on federal habeas review, the futility of the state defendant raising an objection before the state courts cannot constitute "cause" under *Wainwright v. Sykes,* supra, for the failure to object.

In *Engle v. Isaac,* supra, Justice O'Connor, for the majority, stated:

"... the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid. Allowing criminal defendants to deprive the state courts of this opportunity would contradict the principles supporting *Sykes.*"

It is true that prior to *Engle v. Isaac,* supra, the Supreme Court in *Estelle v. Smith,* supra, rejected in footnote # 12 the State's argument that Smith had waived his Fifth Amendment claim by failing to make a timely and specific trial objection to Dr. Grigson's testimony for the same reasons stated by the Court of Appeals in *Smith v. Estelle,* 602 F.2d 694 (5th Cir.1979), footnote # 19.

The Fifth Circuit Court of Appeals rejected the waiver argument because the State did not raise the argument in the federal district court habeas corpus action until its motion for a new trial. That's not true in the instant case. The appellant raised Fifth and Sixth Amendments violations for the first time in his application for writ of certiorari to the Supreme Court. The State responded immediately with the waiver argument. Next the Court of Appeals utilized the reasoning that was itself subsequently rejected in *Engle v. Isaac,* supra. Lastly the Court of Appeals found that Smith's failure to object was due to his counsel's surprise. Such surprise is not applicable in the instant case as the circumstances indicate.

So if the test of *Estelle v. Smith,* supra, be applied to the instant case, even after *Engle v. Isaac,* supra, it would not excuse appellant's failure to object on the basis of violation of the Fifth and Sixth Amendments.[2]

■ This court has granted relief under *Estelle v. Smith,* supra, in some cases,[3] even

---

**2.** The appellant did object at trial to Dr. Holbrook's testimony, but it was not on the basis of the Fifth and Sixth Amendments. Normally the rule is that the objection raised on appeal will not be considered if it varies from the objection made at trial. *Seals v. State,* 634 S.W.2d 899, 909 (Tex.Cr.App.1982); *Bouchillon v. State,* 540 S.W.2d 319 (Tex.Cr.App.1976).

**3.** See *Ex parte Demouchette,* 633 S.W.2d 879 (Tex.Cr.App.1982); *Ex parte English,* 642 S.W.2d 482 (Tex.Cr.App.1982).

though no contemporaneous objection was made at trial, applying what this court perceived to be the federal constitutional law rejecting a waiver of this error. These decisions did not decline to enforce the state contemporaneous objection requirement. Texas has long had and enforced a contemporaneous objection requirement. Even a constitutional error may be waived by failure to object. *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr.App.1976); *Moulden v. State,* 576 S.W.2d 817 (Tex.Cr.App.1978); *Corley v. State,* 582 S.W.2d 815 (Tex.Cr. App.1979). See also *Ex parte Bagley,* 509 S.W.2d 332 (Tex.Cr.App.1974).

█ In addition to the other reasons stated, *Estelle v. Smith,* supra, has no application to the instant case in absence of a timely objection on the basis of the Fifth and Sixth Amendments.

While some of the cases cited on original submission in disposing of the first contention may have been called into question by *Estelle v. Smith,* supra, e.g., *Gholson v. State,* 542 S.W.2d 395 (Tex.Cr.App.1976), we adhere to our construction of our own statute, Article 46.03, V.A.C.C.P.

Having reconsidered this cause in light of *Estelle v. Smith,* supra, as mandated by the United States Supreme Court, we re-affirm the conviction.

TEAGUE, J., concurs in the result.

CLINTON, J., dissents to the disposition of appellant's Sixth Amendment claim.