Baby Ray BENNETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 69645.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 15, 1989.

J. Randall Walker, Jasper, Eden Harrington, Austin, Stephen M. Latimer, Charles Jones, Bloomfield, N.J., for appellant.

Bill A. Martin, Dist. Atty. & Charles R. Mitchell, Asst. Dist. Atty., San Augustine, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON REMAND FROM THE UNITED STATES SUPREME COURT

W.C. DAVIS, Judge.

Appellant was convicted of capital murder. V.T.C.A. Penal Code, § 19.03. The jury answered the special issues in the affirmative and appellant was sentenced to death. Art. 37.071, V.A.C.C.P.

### PROCEDURAL HISTORY

On direct appeal, appellant brought fourteen points of error.[1] In points one

---

1. We will discuss only those points of error pertinent to the remand from the United States

through five in his brief on original appeal to this Court, appellant claimed the trial court erred in allowing Dr. Grigson to examine him and testify as to appellant's future dangerousness at the penalty stage of the trial in violation of the Fifth and Sixth Amendments of the United States Constitution, as well as in violation of the Texas Constitution and state statutory law. We agreed with appellant that the trial court erred under state law; however, we found such error to be harmless under Tex.R.App.P. 81(b)(2).[2] Accordingly, we affirmed appellant's conviction. *Bennett v. State,* 742 S.W.2d 664 (Tex.Cr.App.1987).

Appellant then filed his petition for writ of certiorari with the United States Supreme Court claiming that the testimony of Dr. Grigson at the penalty phase violated his Fifth Amendment right not to incriminate himself and denied appellant his Sixth Amendment right to the effective assistance of counsel in violation of the Supreme Court's decision in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Appellant further argued this Court's holding that the admission of Dr. Grigson's testimony was harmless error conflicts with the Supreme Court's decision in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The United States Supreme Court granted appellant's petition for writ of certiorari[3] and without analysis or particular instructions vacated and remanded the cause to this Court[4] "for further consideration in light of *Satterwhite v. Texas,*" 486 U.S. ——, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). We will now examine appellant's point of error on remand[5] in light of *Estelle v. Smith,* and *Satterwhite v. Texas,* both supra.

In *Estelle v. Smith,* supra, the Supreme Court held the Fifth Amendment[6] dictates a defendant must be warned prior to an in-custody psychiatric examination that he has the right to remain silent and his statements can be used against him on the crucial issue of future dangerousness at a sentencing proceeding. *Id.* at 468–69, 101 S.Ct. at 1875–76. Admission of a psy-

Supreme Court and the facts pertaining to those points of error. For a complete discussion of all points of error brought on direct appeal and all the facts in this cause *see Bennett v. State,* 742 S.W.2d 664 (Tex.Cr.App.1987).

2. Texas Rules of Appellate Procedure, Rule 81(b)(2) provides: "Criminal cases. If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

3. *Bennett v. Texas,* 486 U.S. ——, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988).

4. There appears to be no substantive difference between the Supreme Court reversing a judgment and ordering a remand, and the court vacating a judgment and ordering a remand. "The [c]ourt seems to have abandoned the task of deciding whether one of its recent precedents requires reversal or affirmance of the lower court judgments rendered prior to the new precedent and involving identical or similar issues. The court now prefers to delegate the task to the lower courts, remanding the cases to them for reconsideration in light of the new court precedent." *Ex Parte May,* 717 S.W.2d 84, 91, fn. 5 (Tex.Cr.App.1986) citing R.L. Stern, E. Gressman & S.M. Shapiro, *Supreme Court Practice* (Sixth Edition) at 279.

5. This Court allowed the State and appellant to file briefs upon remand. Appellant's point of error is taken from his brief on remand.

We interpret the remand from the Supreme Court as a request to re-examine our original opinion in light of *Estelle v. Smith,* supra, as well as renewing an examination of our harmless error analysis. In *Powell v. State,* 767 S.W.2d 759 (Tex.Cr.App.1989), this Court had found on original submission that any *Smith* error had been waived. Therefore, it would have been redundant for this Court on remand in *Powell* to examine whether *Smith* error existed in the case. Consequently, upon remand from the Supreme Court, we were concerned only with the harmless error analysis. The instant case is distinguishable in that although appellant raised *Smith* error and federal constitutional error in points one through five on direct appeal, our previous opinion in this cause discussed appellant's claims in the context of State grounds only. Due to the posture of this cause, this Court is being given the opportunity to re-examine appellant's claims in the context of the federal constitution. We accept the opportunity to do so.

6. The Fifth and Sixth Amendments are applicable to the states by virtue of the Fourteenth Amendment. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963).

chiatrist's damaging testimony on the crucial issue of future dangerousness without proper warnings violates the Fifth Amendment privilege against compelled self-incrimination because of a lack of appraisal of rights and a knowing waiver thereof. *Id. See also Ex Parte Woods*, 745 S.W.2d 21 (Tex.Cr.App.1988).

The court held further that the Sixth Amendment right to counsel is also violated where defense counsel is not notified in advance that a psychiatric examination will encompass the issue of future dangerousness and there is no affirmative waiver of the right to counsel. The court reasoned that once adversary proceedings have been instituted, a psychiatric interview is a critical stage of the aggregate proceedings against a criminal defendant. *Id.* 451 U.S. at 470–71, 101 S.Ct. at 1876–77.

The Supreme Court's decision in *Satterwhite v. Texas*, supra, clarified that a violation of *Smith v. Estelle*, supra, as well as other federal constitutional error, is subject to a harmless error analysis under *Chapman v. California*, supra.

In the *Chapman* case the court held that the test for proving such error to be harmless is that the prosecution must prove beyond a reasonable doubt that such federal constitutional error did not contribute to the verdict.[7]

In the instant case, appellant claims that the examination by Dr. Grigson violated his Fifth and Sixth Amendment rights and the mandate of the Supreme Court in *Smith v. Estelle*, supra. A brief recitation of the pertinent facts are necessary for disposition of this point.[8] The record shows that appellant's attorney filed a pre-trial motion in which he requested that the trial court grant a psychiatric examination for appellant to determine his competency to stand trial. On July 22, 1985, Dr. J.A. Hunter, M.D., of the Texas Department of Mental Health and Mental Retardation, completed

his examination and reported that appellant was sane and competent to stand trial.

Shortly before the trial began, the State filed a motion requesting the trial court to order appellant to be re-examined due to the fact that the State had been notified by Dr. Hunter that he would not be available to testify because of a prior commitment in Houston. A hearing was held on the State's motion.

At the hearing, defense counsel strenuously objected, arguing that a doctor had already performed the examination, found appellant competent and filed a report to that effect. Defense counsel argued further that there was no adequate cause to seek a second opinion or to have another doctor come in and examine appellant simply in order to enable the State to have a witness at the trial. The State's motion was granted, and pursuant to this motion, the trial court entered an order, which stated in pertinent part:

It is therefore ORDERED that the Defendant, BABY RAY BENNETT, be examined by DR. JAMES P. GRIGSON, 6116 North Central Expressway, Dallas, Texas, phone # 214–363–3015, a qualified expert in the field of Psychiatry, to determine if the said Defendant is *mentally competent to stand trial*, his *sanity*, his *mental disease or defects*, if any, his *dangerousness*, his *propensity and probability to commit criminal acts of violence that constitute a continuing threat to society* . . . . (Emphasis added)

In our original opinion on direct appeal in this cause, we stated that no issues were raised which would have provided a basis for the trial court's order under Arts. 46.02 or 46.03, V.A.C.C.P. since appellant was examined by a psychiatrist and found to be sane and competent to stand trial. Moreover, the State failed to establish that a new examination was necessary, alleging only that the previous psychiatrist would

---

7. *See* and *cf.* Tex.R.App.P. 81(b)(2) at fn. 2, supra. *See also Barber v. State*, 757 S.W.2d 359 (Tex.Cr.App.1988); *Mallory v. State*, 752 S.W.2d 566 (Tex.Cr.App.1988) (Rule 81[b][2] is the codified progeny of the *Chapman v. California* harmless error analysis.)

8. This statement of facts is taken from our original opinion on direct appeal. *Bennett v. State*, 742 S.W.2d 664, 669–670 (Tex.Cr.App.1987).

be unavailable for trial on the date set. We stated:

> The trial court does not, however, have the authority to appoint a psychiatrist for the purpose of examining a defendant for evidence relating solely to his future dangerousness. *McKay v. State*, 707 S.W.2d 23 (Tex.Cr.App.1985).... Without a statutory basis for the appointment, the trial judge effectively ordered appellant to submit to a psychiatric examination solely for the purpose of determining appellant's future dangerousness. As such, the trial court erred.

*Bennett v. State*, supra, at 671. However, even though we found that the trial court erred in ordering the examination, we also held the error to be harmless given the circumstances of the case. We will now examine appellant's claims of constitutional error.

### ESTELLE V. SMITH ERROR

■ Appellant claims that the warnings given by Dr. Grigson prior to his psychiatric examination were insufficient under *Estelle v. Smith*, supra, and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and thus violated his Fifth Amendment rights.

Dr. Grigson testified at trial in regard to the warnings he gave appellant prior to his examination. The doctor testified to the following:

Q All right. Were—Prior to asking him any questions, or anything of that nature, did you give him any warnings?

A Yes, sir, I did. I first introduced myself, explained to him that I was a psychiatrist, then I read him the court order that requested the examination, the purpose of the examination, then told him that it was not privilege (sic) or confidential because I would be sending back reports and discussing the case.
I also told him that the Supreme Court of the United States states that you got (sic) the right to refuse the examination, remain silent, stop it any time you want to, that it can be used against you, and he should have thoroughly discussed it with his attorney to have a full understanding of the possible consequences of it.

Q Did he seem to understand what you were saying? Far as you could tell?

A Yes, sir. I asked him if there was any part of that that he did not understand, or any part of it that he wanted me to repeat, but he appeared to understand it.

Q Did he give any reluctance or any— any hesitation in talking with you and submitting himself to be examined, and so on and so forth?

A No, sir, he did not.

Counsel for the defense questioned Dr. Grigson further about the warnings given to appellant prior to the psychiatric examination:

Q Would you state again, as best you can recollect, the warnings that you gave Mr. Bennett?

A I first introduced myself and explained who I was, and then read the court order itself to Mr. Bennett. Then, I stated that it was not privilege (sic) nor confidential because the report would be sent back and the case would be discussed, and that under that situation the Supreme Court of the United States (sic) that he did have a right to refuse the examination, to remain silent, to stop it any time he wished to do so, that it could be used against him, and that he should've thoroughly discussed it with his attorney to have a full understanding of the possible consequences of it.

Q And is that pretty much the warning you gave him as best you can recall?

A Yes, sir, it is.

Defense counsel objected to Dr. Grigson being allowed to testify, arguing that he had requested to be present at the initial examination and his request had been denied. He then argued that Dr. Grigson's warning was inadequate. The trial court overruled the objection.

The standard to be applied in determining whether warnings are adequate is whether the warnings "substantially com-

ply" with Art. 38.22 V.A.C.C.P. and *Miranda*. *See Hardesty v. State*, 667 S.W.2d 130 (Tex.Cr.App.1984). We hold that Dr. Grigson's warnings substantially complied with *Miranda v. Arizona*, supra, and Art. 38.22, V.A.C.C.P. *Penry v. State*, 691 S.W.2d 636 (Tex.Cr.App.1985), *cert. denied* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986), cert. granted — U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988); (on unrelated grounds); *Green v. State*, 682 S.W.2d 271 (Tex.Cr.App.1984). We hold that there has been no violation of appellant's Fifth Amendment rights. *Estelle v. Smith*, supra.

■ Appellant also claims that his Sixth Amendment right to counsel was violated because counsel was not notified of the time or place of the examination and did not have an adequate opportunity to consult with and advise his client.

The language of the court order which directed appellant to be examined by Dr. Grigson included the doctor's address in Dallas. The order also stated for what purposes appellant was to be examined. Although the exact time of the examination was not given, we find that counsel had sufficient notice of the examination and its scope, in order to properly consult with his client. *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

■ It appears that appellant is also arguing that he should have had the benefit of counsel being present at or during the psychiatric examination. It is axiomatic that defendants do not possess the right to have counsel present during a psychiatric examination under either the Fifth or Sixth Amendment. *See Stultz v. State*, 500 S.W.2d 853 (Tex.Cr.App.1973). "Because of the intimate, personal and highly subjective nature of a psychiatric examination, the presence of a third party in a legal and non-medical capacity would severely limit the efficacy of the examination." *Id.* at 855. *See also Parker v. State*, 594 S.W.2d 419 (Tex.Cr.App.1980), *cert. denied* 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983); *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.1978), *reh. denied* 444 U.S. 888, 100 S.Ct. 190, 62 L.Ed.2d 123 (1979).

We hold that there has been no violation of appellant's Sixth Amendment right to counsel. *Estelle v. Smith*, supra.

Having found no violation of appellant's Fifth or Sixth Amendment rights, we will therefore not undertake harmless error analysis regarding alleged constitutional error under *Satterwhite v. Texas*, supra.

The original judgment of this Court is reaffirmed.

WHITE, J., concurs in the result.

DUNCAN, Judge, concurring and dissenting.

I agree with the majority's disposition of this case upon remand; however, I still maintain that Dr. Grigson's testimony, which was obtained in violation of State statutes, was not harmless beyond a reasonable doubt.

CLINTON, J., joins.

TEAGUE, Judge, dissenting.

This is another case in which Dr. James P. Grigson, who has earned the nickname of "Dr. Death" because of the number of times he has testified on behalf of the State at the punishment stage of a capital murder trial and the number of times the jury has returned affirmative answers to the submitted special issues, testified.

In this instance, Baby Ray Bennett, henceforth appellant, is a defendant who was tried and convicted of capital murder and assessed the death penalty. Dr. Grigson testified at the punishment stage of appellant's trial and, as usual, was the State's star witness at that stage of the trial.

My favorite Dr. Grigson answer, given the question, is the following:

Q: Well, I'm asking, do you pick those people out [who are like cancer and should be wasted]; I mean, is it you that is charged with that responsibility, to pick out what people in our society are like cancers that make their waste not needless?

A: Yes, sir, I have been asked to do this on numerous occasions by Courts, and I

have been proven to be right in my prediction of individuals continuing to kill; and so I have been asked to do that, and it has proven to be so.... (Taken from Vol. XI of the record of *Emmett Murray Holloway, Jr. vs. State,* No. 68,925, now pending before this Court.)[1]

For further discussion on Dr. Grigson, see Vol. 3, No. 4, "Criminal Justice", Winter, 1989, put out by the *American Bar Association.* It seems to me that when Dr. Grigson testifies at the punishment stage of a capital murder trial he appears to the average lay juror, and the uninformed juror, to be the second coming of the Almighty.

After having read many records of capital murder cases in which Dr. Grigson testified at the punishment stage of the trial, I have concluded that, as a general proposition, when Dr. Grigson speaks to a lay jury, or an uninformed jury, about a person who he characterizes as a "severe" sociopath, which a defendant who has been convicted of capital murder always is in the eyes of Dr. Grigson, the defendant should stop what he is then doing and commence writing out his last will and testament—because he will in all probability soon be ordered by the trial judge to suffer a premature death.

Many attorneys have challenged Dr. Grigson, but few have succeeded in those capital murder cases in which Dr. Grigson testified at the punishment stage of a capital murder trial. Believe me dear reader, for jury purposes, Dr. Grigson is extremely good at persuading jurors to vote to answer the second special issue in the affirmative. In fact, Judge Odom of this Court, in the dissenting opinion that he filed in *Smith v. State,* which was later withdrawn, see 534 S.W.2d 895 (Tex.Cr.App. 1981), once characterized Dr. Grigson's testimony as being "prejudicial beyond be-

lief." Thus, for trial purposes, Dr. Grigson closely resembles a combination of all those great major league baseball hitters who could almost hit homeruns with their eyes closed. However, for appellate and post-conviction writ of habeas corpus review purposes, Dr. Grigson has become to most defendants in whose capital murder trials he has testified in better than the apple pie that Mom cooks. This Court's records, the records of the Supreme Court of the United States, the records of death penalty cases on review in federal district courts in Texas, and the records of death penalty cases on file in the Fifth Circuit Court of Appeals, in which Dr. Grigson testified at the punishment stage of a capital murder case, reflect that Dr. Grigson closely resembles a bush league hitter in that he usually gets no hits in those courts. When Dr. Grigson is shown to have testified in a capital murder case in which the defendant challenges his conviction and sentence of death, the captions of those cases in which relief was granted read almost like the following: "THIS IS ANOTHER DR. GRIGSON CASE." The number of these cases is so great that I will simply refer the reader to either Westlaw or Lexis and not cite them. Thus, to even conclude that Dr. Grigson's testimony may be harmless is ludicrous.

When this cause was previously before this Court, I dissented with a short note: "TEAGUE, J., dissents, and especially dissents to the total disposition of points of error numbered 1–5, inclusive, and to most of the reasoning that is used to overrule the other points of error." Judges Clinton and Duncan also dissented with a short note, "CLINTON and DUNCAN, JJ., dissent to holding that admitting testimony of Dr. Grigson is harmless error." *Bennett v. State,* 742 S.W.2d 664, 677 (Tex.Cr.App. 1987). Those same issues are, however,

---

1. Recently, David Faust, an associate professor of pscyhology at Brown University, and Jay Ziskin, a California lawyer and psychologist, stated in a *Science* article that jurors or other citizens can make psychological judgments as accurately as the professionals. According to their study, Faust and Ziskin concluded that a courtroom decision made by flipping a coin often can be more accurate than one based on the judgment of psychologists and psychiatrists.

From their study, Faust and Ziskin concluded that the accuracy of opinions by psychologists or psychiatrists on future dangerousness of defendants is questionable. They also concluded: "There is virtually no evidence that experts are any better equipped to make those judgments than are lay individuals," and that "clinicians are wrong at least twice as often as they are correct in predicting violent behavior."

now back before this Court, but in a different form; this time pursuant to a remand order from the Supreme Court of the United States. See *Bennett v. Texas*, 486 U.S. ——, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988).

There is no question in my mind that the Supreme Court of the United States has, in the interest of justice, done the right thing in this cause by giving this Court a second opportunity to reevaluate the harmfulness of Dr. Grigson's testimony. Nevertheless, I am concerned about the fact that the Supreme Court, in granting the petition for certiorari to this Court that was filed on appellant's behalf in that Court, and its order remanding this cause to this Court, obviously ignored the rule that if the judgment of a state court was based upon "independent and adequate" state grounds, the Supreme Court should not intervene in that cause. See *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

Nevertheless, given the Supreme Court's order of remand to this Court, and the facts of this cause, and the issues that appellant presented on direct appeal, I believe that the Supreme Court wants this Court to do more in this cause than what the majority opinion does. Because of the majority opinion's inadequacy in disposing of the *Estelle v. Smith,* supra, issue, I believe that this is not the last we will see of this cause.

On direct appeal, appellant presented five points of error that related to Dr. Grigson's examining appellant pursuant to court order, for purposes of determining, inter alia, whether there was a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. Appellant asserted on direct appeal that the trial judge was without any lawful state authority to appoint Dr. Grigson; that appellant's attorney did not have sufficient notice about the examination as to the second special issue; because appellant's counsel did not receive a copy of Dr. Grigson's report until three days after the trial had commenced, this deprived appellant of his Sixth Amendment

right to counsel and the right to confront witnesses against him; and that Dr. Grigson's warnings that he gave appellant prior to the examination were insufficient.

On original submission, this Court sustained the contention that was advanced on behalf of appellant, that the trial judge was without any authority under state law to appoint Dr. Grigson to examine him in order to determine "his dangerousness, his propensity and probability to commit criminal acts of violence that constitute a continuing threat to society....." *Bennett v. State,* at 671. Thus, as a matter of State law, and not federal law, this Court held that the trial judge's appointment of Dr. Grigson was void ab initio. Nowhere in the opinion is the federal case of *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), which was the Supreme Court's linchpin for its case of *Satterwhite v. State,* 486 U.S. ——, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), even cited. A majority of this Court in *Bennett,* supra, also held under Rule 81(b)(2), *Tex.Rules App.Proc.,* which is a state rule of appellate procedure and not a federal rule of appellate procedure, that the error did not, beyond a reasonable doubt, contribute to the jury's affirmative answers to the submitted special issues, see Art. 37.071, V.A.C.C.P., or to the death penalty that the trial judge assessed appellant. Nowhere in this Court's decision is the federal case of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), cited. *Chapman,* supra, sets out the test that must be used in making the determination whether "federal" constitutional error in a case is harmless. And yet, this Court apparently must now decide the issues involving the erroneous admission of Dr. Grigson's testimony in light of those two cases.

The record reflects that after this Court affirmed appellant's capital murder conviction and death sentence, appellant trucked on to Washington, D.C., where he presented in a petition for certiorari that was filed in the Supreme Court of the United States on his behalf by Hon. Stephen M. Latimer and Hon. Charles H. Jones of Rutgers University the following questions: (1) "Was petitioner denied assistance of coun-

sel and the right not to incriminate himself guaranteed by the Fifth, Sixth, and Fourteenth Amendments because the trial court allowed an expert witness, Dr. Grigson, to testify without adequate warning of petitioner's right to counsel and without the presence of counsel in violation of the Fifth, Sixth and Fourteenth Amendments?"; (2) "Did this Court's decision in this cause conflict with the Supreme Court's holding in *Estelle v. Smith,* supra?", and (3) "Did this Court's holding that the error was harmless conflict with the Supreme Court's decision of *Chapman v. California,* supra?"

I have not yet found in the petition for certiorari that was filed on behalf of appellant by Latimer and Jones where this Court's holding, as to why Dr. Grigson's testimony was inadmissible as a matter of state law, is mentioned. This Court held on original submission that because the trial judge was without any state statutory authority to appoint Dr. Grigson to make the above examination, this caused Dr. Grigson's appointment to be null and void as a matter of state law, thereby rendering his testimony inadmissible at the punishment stage of appellant's trial. In fact, my reading of the petition leads me to conclude that the attorneys presented their questions as though this Court had ruled that Dr. Grigson's testimony *was admissible* pursuant to *Estelle v. Smith,* supra. As previously pointed out, this Court made no such holding; this Court held, as a matter of state law, that because the trial judge was without any statutory authority to authorize the examination, he, the trial judge, erred in permitting Dr. Grigson to testify on the issue of future dangerousness at the punishment stage of appellant's trial. However, by using the erroneous foundation that this Court had decided the admissibility of Dr. Grigson's testimony pursuant to *Estelle v. Smith,* supra, which it did not, this enabled counsel to argue to the Supreme Court that this Court erred in holding that the error was harmless beyond a reasonable doubt pursuant to the federal test set out in the Supreme Court's decision of *Chapman v. California,* supra. This Court, however, did not use the federal

harmless error test for two obvious reasons. First, it did not find error as a matter of federal constitutional law, but instead found state law error. Second, because the issue was disposed of as a matter of state law and not federal law, the harmless error test found in Rule 81(b)(2), supra, and not the federal harmless error test found in *Chapman v. California,* supra, controlled.

Without any analysis or any particular instructions, the Supreme Court of the United States in this cause vacated this Court's original judgment and remanded the cause to this Court "for further consideration in light of *Satterwhite v. Texas,* 486 U.S. ——, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988)."

The Supreme Court's remand order in this cause reads much like the one found in *Parker v. Texas,* 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981), in which the Supreme Court remanded that cause "for further consideration in light of *Estelle v. Smith."*

In *Parker v. State,* 594 S.W.2d 419 (Tex. Cr.App.1980), this Court affirmed a *non-capital burglary conviction case,* rejecting the defendant's contention that Dr. John Holbrook, a former associate and colleague of Dr. Grigson's, should not have been permitted to testify as a rebuttal witness on the issue of the defendant's sanity at the guilt stage of the trial. Thereafter, the Supreme Court of the United States granted the defendant's petition for certiorari, vacated this Court's judgment, and remanded the cause for further consideration in light of *Estelle v. Smith,* supra. *Parker,* supra, was the only non-capital case that was remanded in company of a number of capital murder convictions where the death penalty was imposed in which either Holbrook or Grigson had testified at the punishment stages of those trials. Although Holbrook had testified at the guilt stage of Parker's trial, he did not testify at the punishment stage of the trial. For reasons given in its opinion on remand, this Court reaffirmed the defendant's conviction for burglary of a habitation with intent to commit rape and his 99 year sentence,

which was enhanced by a prior felony conviction. *Parker v. State*, 649 S.W.2d 46 (Tex.Cr.App.1983). It found that no *"Estelle v. Smith"* error existed. I do not find where the defendant Parker filed another petition for certiorari in the Supreme Court of the United States.

I pause to point out that just recently this Court in *Satterwhite v. State*, 759 S.W.2d 436 (Tex.Cr.App.1988), pursuant to *Satterwhite v. Texas*, supra, summarily reversed that defendant's capital murder conviction and death sentence and remanded the cause to the trial court for a new trial because of Dr. Grigson's testimony. In this Court's *original* opinion, it erroneously ruled that although there was "Estelle v. Smith" error, under *Chapman v. California*, supra, the error was harmless beyond a reasonable doubt.

In *Satterwhite v. Texas*, supra, the Supreme Court stated that in *Estelle v. Smith*, supra, it had held that defendants formally charged with capital crimes have a Sixth Amendment right to consult with counsel before submitting to psychiatric examinations designed to determine their future dangerousness. The Supreme Court also ruled that if a defendant was deprived of his right to have the assistance of counsel at that stage of the process, such could become harmless under the federal harmless error test set out in *Chapman v. California*, supra. In *Satterwhite v. Texas*, the issue of the admissibility of Dr. Grigson's testimony was controlled by *Estelle v. Smith*, supra, thus requiring this Court to use the *"Chapman v. California"* harmless error test and not the Rule 81(b)(2) harmless error test. In *Satterwhite v. Texas*, supra, the Supreme Court observed that this Court had found "Estelle v. Smith" error, and had also found that the error was harmless. The Supreme Court agreed with this Court's holding that the trial judge had erred by admitting Dr. Grigson's testimony into evidence at the punishment stage of the trial. It was not, however, impressed with this Court's *"Chapman v. California"* harmless error analysis. It found that the error was not harmless beyond a reasonable doubt under the *"Chapman v. California"* harmless er-

ror test. Interestingly, the Supreme Court in *Satterwhite v. Texas*, supra, did not itself use the "Chapman v. California" harmless error test; instead, it used the test *whether beyond a reasonable doubt Dr. Grigson's expert testimony on the issue of dangerousness influenced the jury.* The "Chapman v. California" harmless error test is, when federal constitutional error is determined to exist, has the prosecution proved beyond a reasonable doubt that the error did not contribute to the jury's verdict. Our Rule 81(b)(2) provides that if the appellate court finds *any* error to exist, the trial court's judgment *shall* be reversed unless the State can prove beyond a reasonable doubt that the error *made no contribution* either to guilt or punishment. Given the difference in the wording between the two rules, I strongly disagree that Rule 81(b)(2) is the codified progeny of the "Chapman v. California" harmless error test, as some judges on this Court have opined.

The majority opinion holds that under *Estelle v. Smith*, supra, the State's psychiatrist who examines a defendant must give the defendant warnings that "substantially" comply with the provisions of Art. 38.-22, V.A.C.C.P., and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It cites *Hardesty v. State*, 667 S.W. 2d 130 (Tex.Cr.App.1984), as its authority. However, *Hardesty*, supra, is not on point for several reasons. First, *Hardesty*, supra, was not a death penalty case—it involved two convictions for burglary of a habitation and a revocation of probation. Second, the psychiatrist in *Hardesty*, supra, did not testify on the second special issue. Later in the majority opinion, the opinion appears to cite *Penry v. State*, 691 S.W.2d 636 (Tex.Cr.App.1985), and *Green v. State*, 682 S.W.2d 271 (Tex.Cr.App.1984), as additional authority to support its holding. However, a careful reading of those cases should make it clear to almost anyone that the adequacy of a warning by a psychiatrist where the charge is capital murder was not before the Court to resolve in either of those cases.

In *Estelle v. Smith*, supra, the Supreme Court held that where the defendant nei-

**236**

ther initiated a psychiatric defense nor introduced any psychiatric evidence at trial, the State's introduction of evidence obtained from an unwarned examination violated the defendant's Fifth and Sixth Amendments rights. 451 U.S. at 468–71, 101 S.Ct. at 1875–77. Of course, if the defendant "opens the door" to such testimony, by putting on the defense of insanity, or fails to object to such testimony, then another question is presented. E.g., *Williams v. Lynaugh,* 809 F.2d 1063 (5th Cir.1987).

It appears me that what the majority opinion is doing, without so expressly stating, is invoking and applying what this Court stated and held in *Cook v. State,* 741 S.W.2d 928 (Tex.Cr.App.1987). However, like *Bennett v. State,* supra, *Cook,* supra, too, was remanded for reconsideration in light of *Satterwhite v. Texas,* supra.

Thus, although under *Estelle v. Smith,* supra, a defendant who submits to a psychiatric examination to determine, among other things, his future dangerousness, does not have the right to have counsel physically present at the interview session, he certainly must be told by the psychiatrist that he has the right to have counsel assist him in making the determination whether he desires to submit himself to such an examination. In this instance, as easily seen, Dr. Grigson at no time told appellant prior to the examination that he, appellant, had the right to have the assistance of counsel before making the decision whether to submit to the psychiatric examination. I do not believe that Dr. Grigson's statement, "and he should have thoroughly discussed it with his attorney to have a full understanding of the possible consequences of it", "substantially" satisfies the warning requirements of *Miranda,* supra, or Art. 38.22, supra.

The colloquy that is set out in *Bennett v. State,* supra, at pp. 670–671, should make it clear to almost anyone that counsel did not want Dr. Grigson to examine appellant for any purpose, much less future dangerousness purposes. Thus, there was a Sixth Amendment "right to the assistance of counsel" violation in this cause. In any event, there is *Estelle v. Smith,* supra, error in this cause, and, under *Satterwhite v. Texas,* supra, the trial court's judgment of conviction and death sentence should be set aside. To the majority opinion's failure to so order, I respectfully dissent.